## BATES vs. DELAVAN.

A cross-bill in the same court, or an injunction bill to stay the proceedings in a suit pending, or to obtain relief against a judgment recovered in the same circuit or district court of the United States, between the same parties or their representatives, is not an original suit or proceeding, within the meaning of that provision of the judiciary act of the United States which prohibits the bringing of a civil suit before a circuit or district court, by original process, against an inhabitant of the United States, in any other district than that of which he is an inhabitant, or in which he is found at the time of serving the writ.

Where a circuit court of the United States has jurisdiction of a cause, the court of chancery of a state will not inquire into the regularity of its proceedings as to mere matters of practice, in a new suit founded upon the decree of such circuit court.

Where a citizen of New-York brought a suit at law in the circuit court of the United States for the district of Vermont, upon two promissory notes given for a part of the consideration money on the purchase of land ; and the defendant thereupon filed a bill in equity, in the same court, not only as a defence to the suit upon the notes, but also to set aside the sale, and to have the purchase money which he had already paid refunded, and to have another note delivered up ; and procured the subpœna to be served on the attorney of the plaintiff in the suit at law, who was then out of the jurisdiction of the court and refused to appear to the suit in equity ; and who had also withdrawn the suit upon the notes, as soon as the subpœna had been served on his attorney ; and the complainant in the equity suit proceeded to take his bill as confessed against the defendant therein, for want of appearance upon such substituted service, and thereupon obtained a decree for the delivering up and cancelling of the notes, and also for the repayment of the purchase money which had been paid on the sale ; *Held*, that the circuit court had no jurisdiction over the person of the defendant in the equity suit, so as to authorize such court to make a personal decree against him, for the repayment of the purchase money received on the sale of the land, or for the delivering up of the third note, upon which no suit had been commenced by him in the circuit court.

By the *lex loci rei sitæ*, property, belonging to a person who is not within the jurisdiction of the court in which a suit is brought, may be made subject to the jurisdiction of such court, so as to render the judgment or decree binding, as a proceeding in rem, against the property which is within such jurisdiction ; but if the defendant, or party proceeded against, does not reside within the jurisdiction of the state or country where the suit is brought, and is not served with process and does not appear, the judgment or decree in such suit is purely local ; and it has no extra-territorial effect or validity, *in personam*, against the defendant.

The final decree of a court of equity may be given in evidence, in another suit, although such decree has not been formally enrolled.

1835.

Bates
v.
Delavan.

A court of equity does not decree the specific performance of a contract for the sale of land, if the vendor cannot make a good title, although the contract contains no agreement for covenants of warranty; except in those cases where the vendee assumes the risk of the title, or agrees to take such a title as the vendor is able to give. But where the sale has been consummated by a conveyance, without any covenants of warranty as to the title, and there has been neither fraud nor misrepresentation on the part of the vendor, the vendee has no remedy to recover back his purchase money, upon a subsequent failure of title.

The court will not decree the performance of a contract for the sale of land, where there is a failure of title as to an undivided portion thereof, which the vendee has not agreed to take at his own risk. But if the vendor has executed a conveyance of the land, with warranty, the court of chancery will not rescind the sale, but will leave the grantee to his legal remedy upon the covenants in his deed.

May 25.

THE facts in this case, as they appeared from the pleadings and documentary evidence, were as follows : In July, 1824, W. G. Hooker and D. James, as the guardians of the minor heirs of L. Case, deceased, and by virtue of a supposed authority derived from an order of the supreme court of Vermont, executed to the defendant, Delavan, a conveyance of all the right and title of such minor heirs to certain premises in Middlebury. In August, 1825, the defendant contracted with Bates, the complainant, to convey to him the defendant's title to these premises, for $2250 ; of which sum $750 was to be paid upon the execution of the deed, and the residue in two, three, and four years. The defendant was to satisfy the claim of Nathan Wood for repairs upon the premises, and any claim that the son and heir of L. Case might have on the property. In September, 1825, the complainant paid to the defendant $750, and gave to him three promissory notes, of $500 each, in full for the purchase money. And the defendant gave to the complainant a quit-claim deed of all his right, title, interest, and demand, in and to the premises, with a special covenant therein to warrant and defend the premises against any claim and demand of L. Case, son and heir of L. Case, deceased, and also against any claim in favor of Nathan Wood, on account of the repairs done to the premises. L. Case subsequently commenced a suit in ejectment, against Bates, for the recovery of the premises, and obtained a judgment in the supreme court of Vermont for nine fourteenths of the lot, on the ground that the order under which

James and Hooker attempted to convey the premises was void. The court decided that the other five fourteenths of the premises belonged to the infant son of James, by descent from some of the other heirs of L. Case, who were dead at the time of the conveyance from Delavan. During the pendency of that suit, Delavan commenced suits against Bates, on two of the notes, in the circuit court of the United States for the district of Vermont ; which suits were pending and undetermined at the time of the final decision of the supreme court of Vermont in the ejectment suit. Soon after the decision in the ejectment suit, Bates filed a bill against Delavan, in the same court in which the suits on the two notes were pending, to have the contract for the purchase of the premises rescinded, and to have all the notes given up ; and also to have the $750, which was paid down, refunded. The subpœna upon that bill was returnable at May term, 1831, and was served upon P. Starr, the attorney for Delavan in the suits on the notes ; Delavan residing in the state of New-York. Starr refused to appear to the bill, and withdrew the suits upon the notes. But Bates proceeded upon his bill, and Delavan not appearing, it was taken as confessed ; and the circuit court thereupon made a decree that Delavan should, within sixty days, repay the $750, and interest from the date of the deed, and should deliver up all the notes to be cancelled. The complainant thereupon filed his bill in this court, and prayed for the same relief specifically, and also for general relief. The defendant, by his answer, insisted that the circuit court of the United States had no jurisdiction of the case ; he being at the time a resident of this state, and out of the jurisdiction of that court. The defendant also insisted that the complainant had a perfect remedy at law upon his covenants of warranty ; that the $750 paid down was less than the purchase money of that part of the premises which did not belong to L. Case, the younger ; and that he was only bound to relinquish nine fourteenths of the whole purchase money. But the defendant offered to deliver up all of the notes, under the direction of this court, to be cancelled. He also stated, in his answer, that he had offered to the complainant, previous to the filing of the bill in this cause, to deliver up the three notes

'CASES IN CHANCERY.

and pay the costs incurred in the suits in Vermont, if the comcomplainant would reconvey his interest in the nine fourteenths of the premises, with covenants against his own acts. The cause was heard upon the pleadings and upon documentary proofs.

*R. B. Bates*, the complainant, in person, insisted that the covenant in the defendant's deed was general as to the premises, extending to the whole, and was only limited as to the individual; and that a recovery of part of the premises by that individual laid the foundation for rescinding the whole contract, as much as if the covenant had been general in all respects; that as the premises consisted of one small lot and a dwelling house and barn, designed for a village residence, the failure of the title to the undivided nine fourteenths of the premises defeated the object of the purchaser; and that, without inquiry as to the title to the residue, the contract ought to be rescinded, agreeably to the principles established in courts of equity. To this point he cited *Morris* v. *Phelps*, (5 *Johns. Rep.* 49,) *King* v. *Bardeau*, (6 *Johns. Ch.* 38,) *Nicholson* v. *Stapleton*, (13 *Ves.* 427,) *Sugden's Law of Vendors*, 183 to 192, *Roffey* v. *Shallcross*, (4 *Mad. R.* 227,) *Hepburn* v. *Dunlop*, (3 *Peters' Con. R.* 540,) 1 *Wheaton*, 179, *Brazier* v. *Gratz*, (6 *Wheaton*, 528,) 3 *Peters' Con. R.* 523, *Reed* v. *Bank of Newburgh*, (1 *Paige*, 215.)

To show that the court ought to enforce the decretal order of the circuit court of the United States, the same not being void for want of jurisdiction, he cited 2 *Har. Chan.* 172, 3 *Brown's Ch. Rep.* 12, and *Logan* v. *Patrick*, (5 *Cranch*, 288.)

He also insisted that this case was not analogous to the cases in courts of law where, on a part failure of title, damages are apportioned; as the complainant in this case came into the court of chancery not only to recover the money paid, but to have further proceedings enjoined, and the notes given up and cancelled.

*A. Van Vechten & J. King*, for the defendant, contended, if the complainant relied upon the interlocutory order of the circuit court of the United States for the district of Vermont, that the suit there was improperly commenced, by service of

subpœna upon Starr, the attorney; that the suit was not prosecuted to a final decree; and that the interlocutory order proved to have been entered in that suit, could not be made the foundation of a suit in this conrt.

They also insisted that the frame of the complainant's bill admitted the position thus taken, because the complainant had opened the whole matter by his bill; that if he had a perfect decree in the circuit court, he had waived his rights under it, by putting his claim in the bill upon the original covenant of warranty in the deed; that this court was therefore to judge of the case upon its original merits, in the same manner as if no proceedings had been instituted in the circuit court of the United States, against the defendant in this suit; and that if there had been a final decree in the circuit court, it would have been merely a foreign judgment, not obligatory in this state.

They insisted, further, that the covenant in the deed was limited to the adverse claims of Loyal Case and Nathan Wood, and that damages could be claimed only for that part of the premises which had been recovered from the complainant; that the sale could not be rescinded altogether, even in a court of equity; and that if the complainant had any remedy on the covenants of warranty in the deed, he had a perfect remedy in a court of common law.

THE CHANCELLOR. The allegations in the bill as to the giving up the possession of the premises, after the judgment of the supreme court of Vermont in the ejectment suit, and as to the alleged repairs offset against mesne profits, are not admitted by the answer, or proved; they must, therefore, be laid out of question in the decision of this cause. Some of the allegations in the answer, not responsive to the bill, must also be rejected for want of proof. The objection to the decree of the circuit court of the United States, that it is interlocutory merely, and not final, is not sustained by the facts. The decree purports to dispose of every question in the cause, including the costs of suit, and is therefore a final decree. The direction to prepare a formal decree, in conformity with the decision of the court, I presume, means nothing more

than that the decree shall be drawn up in the proper form, to
be signed by the judges, and enrolled.    But a formal enrol-
ment of a decree in equity is not absolutely necessary to its
validity as a matter of evidence.    (*Winans* v. *Dunham,* 5
*Wend. Rep.* 47.)    And, in the present case, the informality in
the mode of exemplifying the decree of the circuit court of the
United States is waived by the written stipulation of the de-
fendant's solicitor.    The important question in relation to the
decree, therefore, is, how far it is binding upon the defendant,
who was not within the jurisdiction of the court, and who
did not appear in the cause.

By the 11th section of the judiciary act of 1789, (1 *Laws of
U. S.* 55,) it is provided that no civil suit shall be brought
before a circuit or district court, against an inhabitant of the
United States, by any original process in any other district
than that whereof he is an inhabitant, or in which he shall be
found at the time of serving the writ.    It has, however, been
frequently decided, by the courts of the United States, that
cross-bills, and injunction bills to stay proceedings, or to ob-
tain relief against suits or judgments in the same court, be-
tween the same parties or their representatives, are not origi-
nal suits within the meaning of this section of the judiciary
act.    (*See Conk. Treat.* 83 ; *Dunlap* v. *Stetson* 4 *Mason's Rep.*
349.)    The same principle was distinctly recognized by this
court in *Rogers* v. *Rogers,* (1 *Paige's Rep.* 183,) where the de-
fendant, in an injunction bill to restrain proceedings in a suit
at law in the state court, was not permitted to remove the
cause into the circuit court of the United States as an origi-
nal suit.    So far as related to the two notes in the hands of
the attorney of Delavan for collection, and on which suits
were actually pending in the circuit court of the United States
at the time of filing the bill in that court, and the service of
the subpœna on such attorney, the bill in equity might be
properly considered as a proceeding in rem, and as a defence
to the suits which had been commenced on the law side of
the court.

As to the regularity of the substituted service of the subpœna
upon the attorney without a previous order of the court, it is
improper for this court to express an opinion.    Neither is it

important to the decision of this cause, that I should inquire how far the decree of the circuit court is binding and conclusive as to those two notes, as the defendant, in his answer to the present bill, offers to deliver up all the notes, to be cancelled, under the direction of this court.

The bill in the circuit court of the United States, so far as it sought the repayment of the $750 which was paid at the time of the execution of the deed, and to have the third note of $500, on which no suit had been commenced, delivered up and cancelled, was not in the nature of a defence to the suits pending in that court, but was clearly an original bill. And as the defendant resided in this state, and was not served with process, and refused to appear and litigate his rights upon that bill, the circuit court had no jurisdiction to make a decree against him in relation to those matters. The part of the decree, therefore, which directs the repayment of the $750, with interest, and the delivering up of the third note to be cancelled, will not be enforced by this court, as a decree *in personam* against the defendant. By the *lex loci rei sitæ*, property, belonging to a person who is not within the jurisdiction of a court of law, or equity, may be made subject to the jurisdiction of the court, so as to render the judgment or decree of such court binding, as a proceeding in rem, against the property which is within its jurisdiction. But where the defendant, or party proceeded against, does not reside in the state or country where the suit is brought, and is not served with process and does not appear, the judgment or decree in such suit will not be allowed to operate *in personam*, against such party, in the courts of any other state.

This question appears to have arisen and been decided in the same way, in nearly half of the states of the union. And I am not aware that the courts of any state have held such a proceeding conclusive upon the rights of a party proceeded against, who has not appeared or otherwise submitted his rights to the decision of the court in which such proceedings were instituted. (*See* 1 *New Hamp. R.* 242 ; 6 *Pick. Mass. R.* 232 ; 4 *Conn. R.* 380 ; 2 *Verm. Rep.* 263 ; 5 *John. Rep.* 37 ; 1 *Dallas' Penn. Rep.* 261 ; 2 *Leigh's Virg. Rep.* 172 ; 1 *Dev.*

1835.

Bates
v.
Delavan.

*N. C. Rep.* 187; 1 *Bailey's S. C. Rep.* 242; *Hard. Kent. R.* 413; 2 *Yerger's Tenn. Rep.* 484; 6 *Ham. Ohio Rep.* 44, 117; 2 *Blackf. Indi. Rep.* 108; 1 *Breese's Ill. Rep.* 259; 2 *Stewart's Alab. Rep.* 280, 399, 445; *Missouri Rep.* 517, 529; 3 *Mason's C. C. Rep.* 251.) Judge Story, in his very learned and valuable commentary on the subject of the conflict of the laws, in considering the extra-territorial effect of a judgment or decree *in personam* against a non-resident, by a mere citation *viis et modis,* where the party proceeded against is not within the jurisdiction and does not appear, also arrives at the conclusion that its effect is purely local, and is elsewhere to be held and considered as a mere nullity, so far as the personal liability of such party is concerned. (*Story's Confl. of Laws,* 458, § 546. *Idem,* 508, § 609.) In deciding upon the merits of this case, therefore, I shall lay the decree of the circuit court of the United States for the district of Vermont entirely out of view, as being in no way binding upon the defendant personally, as to the $750 and the interest thereon, or as to the last of the $500 notes. And I shall proceed to dispose of the case in the same manner as if that decree had never been made.

As a general rule, a court of equity will not decree the specific performance of a contract of sale, if the vendor cannot make a good title, although the contract has made no provision as to covenants of warranty to be inserted in the conveyance. An exception to that rule, however, exists where, by the contract of sale, the vendee expressly assumes the risk as to the title, or agrees to take such a title as the vendor is able to give. It does not appear to be clearly settled how far, or in what cases, this court will interfere to rescind a contract of sale, after it has been consummated by the execution of the conveyance, without any covenants of warranty, where there is no fraud, but where both parties were under a mistake as to the title of the vendor. By the civil law, an action of redhibition, to rescind a sale and to compel the vendor to take back the property and restore the purchase money, could be brought by the vendee, wherever there was error in the essentials of the agreement, although both parties were ignorant of the defect which rendered the property sold unavailable to

the purchaser for the purposes for which it was intended. This principle of the civil law appears to have been followed in the courts of some of our sister states ; and the case of *Hitchcock* v. *Giddings*, (4 *Price's Rep.* 135,) must have been decided, by Chief Baron Richards, on the same principle. I agree, however, with the learned commentator on American law, that the weight of authority, both in this state and in England, is against this principle, so far as a mere failure of title is concerned ; and that the vendee, who has consummated his agreement by taking a conveyance of the property, must be limited to the rights which he has derived under the covenants therein, if he has taken the precaution to secure himself by covenants of warranty as to the title.[a] And where he has neglected to take such covenants, and there is no fraud or misrepresentation in the case, he has no remedy to recover back the purchase money, upon a subsequent failure of title. (2 *Kent's Com.*, 2d ed. 473.) In the present case, the fact that the complainant has taken a mere quit-claim deed of the right and title of the defendant in the premises, with special covenants against the claims of two particular individuals only, authorizes the conclusion that it was understood and agreed between the parties that the vendee should assume the risk of the title, in regard to the claims of all other persons.

The failure of the title as to an undivided portion of the premises, by the successful assertion of a claim against which the defendant had agreed to indemnify the complainant, would have been sufficient to enable the latter to resist the making of a decree for a specific performance, upon a bill filed by the vendor. But it does not follow from this that the complainant may rescind the whole contract, which has been in part consummated, by the execution of the conveyance and the payment of a part of the purchase money. There are many cases in which the court will not lend its aid to compel a specific performance of an executory agreement, in which it would not feel itself authorized to interfere, by decreeing that an executed contract should be rescinded. Where a vendor

(a) See *Simpson* v. *Hawkins*, 1 *Dana's Kent. Rep.* 305.

1835.

Bates
v.
Delavan.

has agreed to convey the whole premises, and it is found that he can only perform his agreement as to an undivided part thereof, the court will not compel the purchaser to accept a partial performance, when it is evident that he will be injured by the partial failure. The party who is unable to perform his agreement in full, has, in general, no equitable claim to the interposition of the court in his behalf, if the adverse party prefers to rescind the contract in toto. But a vendor, who has only covenanted to warrant or indemnify the purchaser against a claim upon a part of the premises, can perform his covenant, by paying such indemnity, according to the spirit of the agreement contained in the conveyance. In such a case, if the vendee wishes to secure to himself the right to rescind the whole contract, upon the breach of the covenant of warranty as to a part only, he should have a special provision to that effect inserted in the deed. The complainant, therefore, is not entitled to a decree for a return of the purchase money which has been paid ; the amount of the notes being more than sufficient to cover the nine fourteenths of the premises as to which the covenant of warranty extended. But as the defendant has offered to give up the notes to be cancelled, under the direction of the court, a decree must be entered to that effect, upon the complainant's releasing all claim against the defendant on the covenants of warranty contained in the deed, and releasing to the defendant the interest, if any, which he acquired in the nine fourteenths, under the original conveyance from the defendants.

The defendant, having succeeded as to the only matter which was really in controversy between the parties in this cause, is entitled to the costs of his defence.