## SIMMONS *a*. De BARRE.

*New York Superior Court, General Term, May,* 1859.

EVIDENCE.—JUDGMENT.—JURISDICTIONAL FACTS.—LIMITED JURIS-
DICTION.— CITY COURT OF BROOKLYN.

When the judgment of a local court in a transitory action is offered as evidence
   that a particular fact has been judicially determined, the record of the judg-
   ment is no evidence of that fact, unless it affirmatively appears by the record
   itself that all the facts necessary to give the court jurisdiction, both of the sub-
   ject-matter of the suit and of the parties to it, existed, if the court, by the law
   creating it has no jurisdiction of that particular action, nor of any transitory
   action, unless all the defendants resided, or were personally served within the
   city within which such court is required by law to be held.
Such a court is not only a court of limited jurisdiction, but an inferior court,
   within the common-law meaning of that term.
The judgment of such a court, to be in itself evidence in another court of a valid
   judicial determination of any fact which it purports to decide, must show on its
   face that the defendant resided, or was personally served with summons within
   that city.
The City Court of Brooklyn is an inferior court, and of limited jurisdiction.

Appeal from an order granting a motion for a new trial.

The action was one of assault and battery, tried before Mr.
Justice Pierrepont and a jury. The plaintiff called as a witness
Fanny Behram, a person who, on the 17th of August, 1856, had
been married to the defendant. The plaintiff objected to her
being sworn, on the ground of her being incompetent against
her husband. The plaintiff then offered in evidence a certified
copy of a decree, which is as follows :

" At a special term of the City Court of Brooklyn, held at the
City Hall, in the city of Brooklyn, on the 10th day of March,
A.D. 1857.

" Present, Hon. E. D. CULVER, City Judge.

"Fanny De Barre, by
Zion Bernstein, her next friend, &c.
*a.*
Reuben B. De Barre.

" This action having been brought on to be heard upon the complaint herein, and upon the report of T. B. Miliken, Esq., a referee duly appointed in this action, from which it appears that all the material facts charged in the said complaint are true, and that the said defendant was at the time of said marriage physically incapable of entering into the marriage state, and that the said incapacity still exists, and is incurable.

" Now, on motion of O'Brien and Heginbotham, attorneys for the plaintiff, and on hearing Mr. Samuel Brown for the defendant, it is ordered, adjudged, and declared that the said marriage between the said plaintiff and the said defendant mentioned in the complaint was null and void, and that the same is hereby declared a nullity, and the said parties are, and each of them is, freed from the obligations thereof.

" And it is further adjudged and decreed, on the stipulation and consent of the parties, that the said plaintiff Fanny De Barre do recover and receive from the defendant, and that said defendant do pay to her the sum of $1200, in full for all claim of dower and right of dower and thirds in the estate and property of the defendant, and in full of the costs and disbursements of this action ; and that the said plaintiff by the said Zion Bernstein, her guardian and next friend, do execute to said defendant a full and satisfactory release thereof for the consideration aforesaid.

" Indorsed, 'Filed March 10, 1857.'

" Kings county, city of Brooklyn, in the clerk's office of City Court of Brooklyn. [SEAL.]

" I do hereby certify that I have compared the foregoing copy of an original decree of divorce with the original now recorded in my office, and that the same is a correct transcript thereof, and of the whole of such original.

"In witness whereof, I have hereunto signed my name [L. S.] and affixed the seal of the said City Court of Brooklyn, this 23d day of November, 1857.

SAMUEL L. HARRIS,<br>Clerk of the City Court of Brooklyn."

The decree was admitted in evidence by the learned judge, and the witness sworn. A verdict was found for the plaintiff. Upon motion the verdict was set aside, and a new trial granted, solely on the ground that the judgment ought not to have been admitted. (See the case at special term, reported 6 *Ante*, 188.)

An appeal from this order was taken, and now came on to be heard.

*P. Y. Cutler*, for the appellant.—I. The mere fact that a decree was made, the *res ipsa*, may be proved by a production of the decree without the pleadings. (1 *Greenl.*, § 511.)

II. A record of a court having a seal and clerk proves itself, because it is a record of a court of record, and imports absolute verity (*Greenl.*, § 503); and it is conclusive between the same parties upon the matter adjudicated, because it is presumed to have jurisdiction. (1 *Phill. Ev.*, 385 and notes; *Note* 714, p. 1061. As to foreign Courts of Admiralty, see *Story's Confl.*, 643; *Coke Litt.*, 352 a.)

III.—The City Court of Brooklyn is as much a court of record as the Superior Court is a court of record, and its records under seal are entitled to equal respect. 1. That the court had jurisdiction of the parties is proved by the record. It was not necessary to prove that they were residents of Brooklyn, any more than it would be necessary to prove that the defendants in the Superior Court were served in the city. If the defendants had not been served at all, they would be bound, because they appeared by attorney, and that appearance is noted in the record. (*Cow. & Hill's* notes, 799, 800; Starbuck *a*. Murray, 5 *Wend.*, 148.) Besides, consent confers jurisdiction over the parties where the court has jurisdiction of the subject-matter. When parties voluntarily come before a court having jurisdiction of the subject-matter, and submit to its jurisdiction, they are concluded. 2. A court of limited jurisdiction is not neces-

Simmons *a* De Barre.

sarily an inferior court. No court of record is an inferior court, and the Brooklyn court is a court of record.

IV. The error has been in deeming the Brooklyn court an *inferior* court. It is an inferior court in one sense, because its judgment may be reviewed ; but every court in the United States, except the Supreme Court of the United States, is an inferior court in the same sense. In the legal acceptation of the term, it is not an inferior court, although a court of limited jurisdiction. Every court in the United States is of limited jurisdiction. (Barbour *a*. Winslow, 12 *Wend.*, 102 ; *Notes to Phill. Ev., C. & H.*, 1016 ; Selin *a*. Snyder, 7 *Serg. & R.*, 166 ; Selin *a*. Snyder, 11 *Ib.*, 436 ; Raborg *a*. Hammond, 2 *Harr.*, 42, 50 ; Britlain *a*. Kinnard, 2 *Brod. & Bing.*, 432.)

V. Even the proceedings of inferior courts are *prima facie* evidence of jurisdiction, when the jurisdictional facts are recited in those proceedings ; and, although in England the cases have " fluctuated from absolute verity to mere nullity," yet in America the rule is, that they are evidence until the contrary be shown. (See the whole subject discussed, vol. 2, *Notes to Phill. Ev.*, 1014, 1016 ; Barbour *a*. Winslow, 12 *Wend.*, 102.)

VI. The record was rightly received in evidence, and was of itself full proof, whether viewed as the proceeding of a superior or inferior court, that the court had jurisdiction of the parties and subject-matter, and the judgment should not have been reversed for that reason.

*Gilbert Dean*, for the respondents.—I. The City Court of Brooklyn is a court of inferior and limited jurisdiction. (*Const.*, art. 6, §§ 3, 14.) The Supreme Court *only* has *general* jurisdiction in law and equity. The power of the Legislature is limited to the establishment of " *inferior local courts.*" And if the act had purported to make the City Court of Brooklyn a court of " *general*" jurisdiction, it would have transcended the powers of the Legislature. The acts establishing the court (*Laws of* 1849, 170, § 2, and *Ib.*, 1850, 148) expressly limit its jurisdiction.

II. The fact having been established that the decree offered was that of an inferior court, the authorities are clear that enough was not shown to· make the copy decree which was introduced in evidence admissible. (Bloom *a*. Burdick, 1 *Hill*, 130; Yates *a*. Lansing, 9 *Johns.*, 437 ; Hart *a*. Seixas, 21 *Wend.*,

40.) There should always appear sufficient on the face of the proceedings in an inferior court to show that it has jurisdiction in the cause of which it takes cognizance. (Powers a. The People, 4 *Johns.*, 492 ; Bloom a. Burdick, 1 *Hill*, 130 ; Noyes a. Butler, 6 *Barb.*, 613 ; Foot a. Stevens, 17 *Wend.*, 483 ; Peacock a. Bell, 1 *Sandf.*, 73 ; Kundolf a. Thalheimer, 2 *Kern.*, 593 ; Frees a. Ford, 2 *Seld.*, 176 ; Turner, Administrator a. Bank of North America, 4 *Dall.*, 8.)

III. The decree not setting out facts showing jurisdiction, the divorce is not proved, and Fanny Behrman was an incompetent witness in the cause.

By the Court.[*]—Bosworth, Ch. J.—If the City Court of Brooklyn is an *inferior* court, within the meaning of the rule that the jurisdiction of an inferior court will not be presumed in support of the validity of its proceedings, but on the contrary enough must appear upon its records, or be otherwise proved, to show that it had jurisdiction of the subject-matter of the action and of the parties, in order to make its records evidence in another court; the present appeal may be briefly disposed of.

That court has no jurisdiction of any transitory action, unless one of two facts exists. All of the defendants in it must either " reside or be personally served with the summons within said city." (*Laws of* 1849, 170 ; § 2, subd. 2.)

The judgment or decree, given in evidence, does not even recite that De Barre resided within that city, when that action was or may be claimed to have been commenced, or when the judgment on it was rendered ; nor that he was ever personally served with the summons in that action within that city, or elsewhere.

The act organizing that court was passed the 24th of March, 1849.

Section 8 of the Code does not in terms apply to that court any provisions of the Code, except sections 69–126, both inclusive : that court is not named in section 9. It is by no means clear, therefore, that the concluding sentence of section 139 applies to that court : that sentence was incorporated into the Code by the

---

[*] Present, Bosworth, Ch. J., Hoffman, Woodruff, Pierrepont, and Moncrief, JJ.

amendments enacted in 1851. (*Laws of* 1851, p. 887, § 139, p. 904, § 470 (§ 2); *Ib.*, Appendix, p. 51, §139 ; *Laws of* 1849, p. 644, § 139.) If it does not apply to that court, then the voluntary appearance, in any transitory action, of a defendant not residing within that city, would not give to that court jurisdiction of such action. Consent cannot confer upon any court jurisdiction of an *action*, when jurisdiction of it is not conferred by law.

To constitute a court a superior court (within the meaning· of the rule we are considering), as to any class of actions, its jurisdiction of such actions must be unconditional, so that the only thing essential to enable the court to take cognizance of them is, the acquisition of jurisdiction of the persons of the parties.

In Kempe's Lessee *a.* Kennedy, *et al.* (5 *Cran.*, 173), Chief-justice Marshall, in speaking of the Court of Common Pleas for the county of *Hunterdon, New Jersey* (the judgment of which, and the proceedings upon it being relied on as a defence), said that " in considering this question, therefore, the constitution and powers of the court, in which the judgment was rendered, must be inspected.

" It is understood to be a court of record, possessing, in civil cases, *a general jurisdiction to any amount*, with the exception of suits for real property.

" In treason, its jurisdiction is over all who commit the offence. * * * ; with respect to treason, then, it is a court of general jurisdiction, so far as respects the property of the accused." The action was ejectment, and the defendant made title under a judgment of such Court of Common Pleas, confiscating the real estate in question, by reason of the treason of the person who was the common source of title.

The New York Common Pleas has been decided not to be an inferior court within the meaning of the rule under consideration, because, by 2 *Rev. Stats.*, 135, 2d ed., 1, it had power to hear, try, and determine " all transitory actions wherever the cause may arise," and was also a court of record proceeding to the general course of the common law. (Foot *a.* Stevens, 17 *Wend.*, 483 ; see Hart *a.* Seixas, 21 *Ib.*, 40.)

In Frees *a.* Ford (2 *Seld.*, 176), the present ˚county courts of this State were held to be inferior courts, and that it was essen-

tial to the validity of their judgments that " all the facts neces-
sary to give the court jurisdiction, as well over the subject-
matter of the suit as of the parties, must appear in the record."

By section 30 of the Judiciary Act (*Laws of* 1847, 328), their
jurisdiction extends to the transitory actions named in it,
" when all of the defendants, at the time of commencing the
action, reside in the county in which said court is held," and
" when the debt or damages claimed" do not exceed the sums
specified.

They had not therefore a general and unconditional jurisdic-
tion of any transitory action ; and were also—in respect to the
cases in which jurisdiction of the actions enumerated existed,
so far as it depended on the residence of the defendants—
limited to those on which the debt or damages claimed did not
exceed a specified amount.

Without entering into a more detailed statement of the facts
of the various adjudged cases, or of the reasons on which they
were decided, we think it may be stated as a settled rule, that
when the judgment of a local court in a transitory action is
offered as evidence that a particular fact has been judicially
determined by competent judicial authority, the record of the
judgment will be no evidence of that fact, unless it affirmatively
appears by the record itself that all the facts necessary to give
the court jurisdiction, both of the subject-matter of the suit and
of the parties to it, existed ; if the court, by the law creating it,
has no jurisdiction of that particular *action, nor of any transi-
tory action,* unless all the defendants resided or were personally
served with the summons within the city within which such
court is required by law to be held.

Such a court is not only one of limited jurisdiction, but its
jurisdiction of every *action; of the action itself,* being made
to depend either upon the place where the defendants *reside,* or
the fact that they are " personally served with the summons"
within a designated locality smaller than a county, it is an
inferior court, within the common-law meaning of that term.

If the court had a general jurisdiction of an enumerated class
of actions, without reference to the place where they arose, or
the parties to them resided, or to the amount sought to be re-
covered, being a court of record, and proceeding according to the
general course of the common law, it might be, *quoad hoc,* a

superior court, within the meaning of the rule under consideration.

Having jurisdiction of the action, jurisdiction of the persons of the parties in it might be acquired by their voluntary appearance.

But the difficulty of the present case is, that the court had no jurisdiction of the *subject-matter of the suit—of the action itself*—unless the defendant resided within the city of Brooklyn, or was personally served with the summons within that city.

Such a court is an inferior court, within the common-law meaning of that phrase. Its judgment, to be evidence in another court, must show on its face that the defendant resided, or was personally served with the summons within that city, to be, *per se*, evidence of a valid judicial determination of any fact which it purports to decide.

This is not shown by the decree or judgment which was received as evidence that the defendant and his wife had been divorced by that court, in an action between them instituted for that purpose.

But it is insisted that section 4 of the act creating the court, and the amendment made to section 139 of the Code in 1851, have, together, the effect to enlarge the jurisdiction of that court, and make it more extensive than it was by the statute *alone*, by which the court was created.

That fourth section reads thus : " The said City Court shall possess the power and authority, in relation to actions *in* said court, and the process and proceedings therein, as are possessed by the Supreme Court in relation to actions pending in the said Supreme Court. And all laws regulating the practice of the Supreme Court, and the course of procedure therein, shall, as far as practicable, apply to and be binding upon the said City Court; and the said City Court shall have power to review all of its decisions, and to grant new trials." (§ 4, *Laws of* 1849, p. 171.)

We think this section must be construed as prescribing the practice in actions *in* the City Court of Brooklyn, and its power over the process and proceedings in such actions ; and that it cannot be so construed that subsequent amendments of the *Code*, not refering to that court, shall be held to enlarge, and as having been intended to enlarge, its jurisdiction.

If the Legislature had intended, by the amendment made in

1851 to section 139 of the Code, to extend the jurisdiction of that court, by force of such amendment, to all transitory actions against persons not residing within the city of Brooklyn, on their voluntary appearance therein, it would seem that section 8 would have been so amended as to designate it as one of the courts to which that section was applicable, and that section 9 would have been so amended that such court would have been named in it.

It is quite clear, as we think, that section 4 of the act creating that court does not apply to it the provisions of section 135 of the Code, so as to enable a person to commence an action in it, against a sole defendant not residing within the city of Brooklyn, by the publication of a summons. The concluding sentence of section 139, as it was amended in 1851, does not, in our opinion, affect the question of the jurisdictional capacity of the court, nor change it from an inferior to a superior court.

This view renders it unnecessary to decide the question, whether a copy of the judgment of a superior court, in an action of divorce, without a copy of the pleadings, would be competent and sufficient evidence that the parties had been and were divorced by a regular and valid judicial determination,—provided the judgment recites the nature of the action, and the appearance of the parties in court, and that they were heard on the application for judgment. Being an inferior court, it was necessary to produce a judgment-roll, which showed on its face that the court had jurisdiction both of the action and of the persons of the parties. This not having been done, the judgment was erroneously received as evidence, and the order granting a new trial on account of that error, must be affirmed with costs.

It may also be observed, that if "a voluntary appearance" of R. B. De Barre would, as effectually, give that court jurisdiction of that action, as the personal service of a summons upon him within the city of Brooklyn, the judgment does not recite that he caused his appearance to be entered, nor that he personally appeared therein, nor that any attorney of the court served "notice of an appearance or retainer generally" (*Rule* 11) for him in that action; nor that "Mr. Samuel Brown" who was heard for him, was an attorney, or had served notice of

appearance for him, or that he had been retained for him in that action.

Order affirmed.

HOFFMAN, J. (dissenting:—after stating the facts).—The objection to the judgment produced, rests upon the point that the City Court of Brooklyn is a court of inferior limited jurisdiction, and hence, in the language of the defendant's points, " there should always appear sufficient upon the face of the proceedings to show that it has jurisdiction in the cause of which it takes cognizance. The decree in question did not set out facts showing such jurisdiction."

The City Court of Brooklyn was organized by an act of the Legislature of the 24th of March, 1849. (*Laws of* 1849, ch. 125.) It was declared to be a court of record, and its jurisdiction to extend to the following cases: 1st. To the actions enumerated in section 103 (now, 123) of the Code of Procedure, when the cause of action shall have arisen, or the subject of the action shall be situated within the said city. 2d. To all other actions, where all the defendants shall reside or be personally served with the summons within said city. 3d. To actions against corporations created under the laws of this State, and transacting their general business within the said city, or established by law therein.

This action, to pronounce the nullity of the marriage, was within the jurisdiction of this court, provided the defendant resided or was personally served with the summons within the city of Brooklyn. It is said, that neither of these facts appears upon the document produced. It deserves notice, that the objection comes from the defendant in this action, who was the defendant in the cause in which the proffered judgment was given.

The first question I shall examine is, whether the last clause of section 139 of the Code, adopted in 1851, that a voluntary appearance of a defendant shall be equivalent to personal service of a summons upon him, does not apply to the proceedings in the City Court of Brooklyn.

The Code as passed on the 12th of April, 1848, contained in section 8 the same provision as to the titles of the second part, applicable to all courts, and those applicable to the enumerated courts, as is found in the present section 8, except that the

number of the titles was twelve instead of fifteen. The section as it now stands was adopted the 11th of April, 1849.

When the Code of 1848 went into effect, the City Court of Brooklyn had not been established. It was organized by an act of the 24th of March, 1849, to go into effect on the 1st of May ensuing, except some few sections, as to elections, &c., which went into effect immediately.

In 1848 and in 1849, section 139 of the Code was merely, that jurisdiction was acquired from the service of the summons, or allowance of a provisional remedy. In 1851, the clause was added: "A voluntary appearance of a defendant is equivalent to personal service of the summons upon him."

In Mahoney a. Denman (1 Duer, 601), it was held at special term, two other judges concurring, that a defendant who voluntarily appeared and answered, could not in his answer take the objection of a want of jurisdiction in the Superior Court.

The case of Binckle a. Eckhart (3 Comst., 132) was cited, where the Court of Appeals held, upon a question of the jurisdiction of a vice-chancellor, the cause of action appearing to have arisen elsewhere than in his circuit, that a voluntary appearance by a solicitor did not give jurisdiction. "The residence of a party within the circuit was a jurisdictional fact, which must exist before the court can act at all, either by issuing process or accepting the appearance of the defendant."

This case was decided in December, 1849, and in April, 1851, the clause of the Code referred to was adopted. (Laws of 1851, p. 887.)

When the Legislature, in March, 1849, established the City Court, must it not have meant, that the proceedings and practice should be regulated by the Code of Procedure, passed in 1848? Was it to be left to some other course of proceeding, except as expressly provided? The argument from the omission in the enumeration of the courts in section 8, in 1848, is of no weight, as this court did not exist, although the omission in 1849 is so. Yet it seems to me that section 4 of the act was adopted with a view to meet the very point. It directs, "that the City Court shall possess the powers and authority in relation to actions in the said court, and the process and proceedings therein, as are possessed by the Supreme Court in relation to actions pending in said Supreme Court; and all laws regulating the practice of

the Supreme Court, and the *course of procedure* therein, shall, as far as practicable, apply to and be binding upon the said City Court."

It deserves notice that the preamble to the Code uses the phrase, that a uniform *course of proceeding* in all cases should be established.

The powers of the Supreme Court in relation to actions—the process and proceedings in such court—all laws regulating its practice and the cause of its procedure, define and govern the mode of action in the City Court ; of course where applicable, and when not otherwise specially regulated. It seems to me, that not only was the law of the Code which governed the Supreme Court, as the Code then existed, necessarily declared to be the law of the City Court when constituted, but that the section was prospective, and whatever rule should subsequently govern the proceedings in the Supreme Court, should be equally applicable to this.

If so, when the amendment of 1851 gave a rule to the Supreme Court, it gave one equally to the City Court.

The City Court has applied and determined cases upon provisions of the Code, not within the four first titles mentioned in section 8 (sections 69–126 inclusive). Toomey *a*. Shields (9 *Legal Obs.*, 66) involved the consideration of sections 128 and 130.

It may aid this examination to advert to the provisions re specting others of the courts enumerated in sections 8 and 9—for example, the Superior Court. The jurisdiction which it could possess in an action like the present to declare a marriage null under section 33, could only be when the defendant resided or was personally served with the summons within the city of New York. The Code is expressly made to regulate its course of procedure by section 8. Thus it stood in 1848 and 1849. Then in 1851, the change in section 139 was made. The effect was undoubtedly to enlarge the jurisdiction of this court, by permitting the voluntary appearance to be the same as personal service.

Now, if by force of section 4 of the act as to the City Court, the Code was to govern its course of procedure, it seems difficult to say that the effect of the change in 1851 shall not be to enlarge its jurisdiction, when it is so as to the Superior Court. Grant

Simmons *a*. De Barre.

that the Code was applicable at all, it seems to follow that all subsequent amendments of the Code, not clearly inapplicable, will regulate this court as well as the others. On what ground is a distinction to be made, between different subsequent amendments, so as to render some applicable and others not so? There are some of course which clearly cannot apply.

The argument that jurisdiction is not to be deduced by implication, but must be expressly given, seems to me as forcible in relation to the Superior Court, as to the one in question. We extend the jurisdiction of the former by the new clause, because the Code itself makes the Code relate to such court : we do the same here, because a particular statute makes the Code apply.

The effect of an appearance in an action is stated in several cases. The party admits himself to be regularly in court, and all defects in the summons and its service, and even the total omission of any service, becomes immaterial. (Webb *a*. Mott, 6 *How. Pr. R.*, 439.) See as to the course in chancery (1 *Barb. Ch. R.*, 81 ; 1 *Hoffm. Pr.*, 170), particularly the case of Capell *a*. Butler (2 *Sim. & St.*, 462).

We have, in the present case, undoubted jurisdiction of the subject-matter of the action, viz., the annulment of the marriage contract for physical incapacity, provided the defendant resided or was served within the city of Brooklyn. We have a recital in this judgment of what is equivalent to a general appearance, to an admission that he was regularly in court, with a consent recited to contain portions of the decree or judgment.

This is not properly a consent that a tribunal shall have jurisdiction of a case which the law has expressly or impliedly forbidden it to entertain. It is tantamount to an admission of residence, or of personal service ; completing all that was necessary to perfect the jurisdiction.

The meaning of the rule, that consent cannot give jurisdiction, is well explained in the case of Overstreet *a*. Brown (4 *McCord's R.*, 79). Jurisdiction cannot be given to a court merely by consent of parties ; but if the court has jurisdiction of the matter, and one party has some privileges which exempt him from that jurisdiction, he may waive the privilege, if he chooses so to do. This is repeated in nearly the same language in Bostwick *a*. Perkins (4 *Georg. R.*, 67).

Mr. Justice Hand, in Kundolf a. Thalheimer (2 Kern., 593–599), adverts to such a distinction, between jurisdiction depending upon residence or of the person, which could be waived by appearance and pleading, and jurisdiction of the subject-matter. He refers to Frees a. Ford (2 Seld., 176), which arose upon pleadings, and observes that the pleas in that suit were in truth nothing more than demurrers to the complaint in effect.

So in the case of Binckel a. Eckhart (ut supra), the main objection was, that the vice-chancellor had not jurisdiction of the causes or matters, because they did not arise within his circuit; and Justice Gardiner notices that a defendant may dispense with service of process, as he may waive any other personal privilege. But there, the bill alleged that the defendants were non-residents, and the latter appeared and admitted it. The want of jurisdiction appeared on the record.

It should be noticed that there is much late authority to show, " that recitals or statements in the record of an inferior court of facts constituting jurisdiction, may be received as *prima facie* evidence of such facts." By the Court, Paige, P. J., in Harrington a. The People (6 Barb., 607–610)—Willard, P. J., in Adams a. Saratoga and Washington Railroad Company (11 Ib., 455),—this decision was reversed on appeal (note at p. 415), but on the ground that the evidence offered to disprove the jurisdictional facts recited in the record should have been received in evidence, April, 1852. I have not been able to find a report of the case in the Court of Appeals. See also Barber a. Winslow (12 Wend., 102), as to the distinction in this particular between the rules of evidence and the rules of pleading. See further, Clyde a. Rose Plank Railroad Company a. Parker (22 Barb., 324). The recitals in a discharge under the insolvent laws are held to be *prima facie* evidence only of jurisdictional facts. Stanton a. Ellis (2 Kern., 575), but this is a qualification of the statute (2 Rev. Stats., 38, § 19).

It must be admitted that many of the judges in the authorities cited to support the position of Justices Paige and Willard, use very different language. Yet it appears to me, that if the proposition can be maintained, that the clause of section 139 before discussed, applies to this court, then a record of such court (using the term in the sense of a judicial determination of rights of the parties in a cause), which shows on its face jurisdiction

of the subject of the action, and a voluntary appearance of the defendant, meets the requisition of the rule, that the record shall show jurisdictional facts, in its just sense.

3d. This does not, however, fully decide that there may not be a technical difficulty still existing, that the whole of the proceedings, which would constitute the roll, should be produced. I proceed to that question.

Mr. Gresly (*On Evidence in Equity*, p. 109) says: " Where a decree contains a recital of a bill and answer, it may be admitted in evidence, without further proof of them." He cites Trevor, Ch. J., Wheeler *a.* Lowth (*Comyn's Dig.*, c. 1, p. 97), and Twisden, J., in Trowel *a.* Castle (1 *Keble*, 91).

Trowel *a.* Castle is an express authority to the point, where the exemplification was under seal. This distinction would not, I apprehend, be now regarded. But in the present case, the decree is authenticated by the seal of the court.

Buller, J. (*Buller's N. P.*, 235), thus states the rule. If a party wants to avail himself of a decree only, and not of the answer or deposition, the decree, being under the seal of the court, and *enrolled*, may be given in evidence without producing the bill and answer, and the opposite party will be at liberty to show that the point in issue was not *ad idem* with the present issue. He cites Lord Thanet *a.* Patterson (*K. B. Easter*, 12 *Geo. II.*)

Under decisions in our State, the enrolment of the decree would be unnecessary (5 *Wend.*, 47; 5 *Paige*, 304).

In Layburn *a.* Crisp (8 *Carr. & Payne*, 397), upon a trial at bar, all the judges concurred in holding that a decree in chancery, with the bill and answer, was admissible in evidence without producing the depositions. Lord Abinger said he was not certain but that the decree would have been receivable without the bill and answer being put in.

In Davies *a.* Lowndes (1 *Bing. N. Cas.*, 597), also a trial at bar, a decree in chancery was read in evidence. It does not appear whether the pleadings were introduced. (Blaver *a.* Hollis, 1 *Crompt. & Meeson*, 396.)

In Wynn *a.* Harman (5 *Grat.*, 157), a decree in partition, and the report of the commissioners sufficiently designating the land referred to, was admitted without producing the whole record.

In Whitmore a. Johnson's heirs (10 *Humph.*, 610), the rule is explicitly admitted, that if a decree is in itself sufficiently comprehensive to show what was adjudged, and jurisdiction, it would suffice without producing the bill and answer. These were recited, but not in detail. The defect was, that the decree did not show that personal estate was exhausted, which was a statutory prerequisite to a sale of real estate, by the tribunal which had ordered such sale.

When the fact of jurisdiction is made out, every intendment of regularity is made to support a judgment or decree, and regularity of proceedings. (12 *Wend.*, 40.) Particularly is this the case when the decree is proffered to be used against a party who was a party to the suit itself, and when he himself can immediately contradict its recitals, even by his own oath. It was decided by the King's Bench in Ashworth a. Kempe (*Doug.*, 49), that a writ of execution is evidence of a judgment as to the party to the action in which it is given.