CITY OF SALEM *vs.* EASTERN RAILROAD COMPANY.

An action to recover money expended from the treasury of a city or town by its board of health to remove a nuisance may be maintained in the name of the city or town.

A statute which " ratifies and confirms " the location of a railroad and " the railroad," " as actually laid out and constructed," does not exempt the railroad company from liability for injuries caused to public or private rights by the manner in which they have constructed or are maintaining part of the road at the time of the enactment.

An order of a board of health, under the Gen. Sts. *c.* 26, § 8, for the removal of a nuisance, is valid without previous notice to the parties interested and opportunity for them to appear and be heard.

If an order of a board of health, under the Gen. Sts. *c.* 26, § 8, to a railroad company for the removal of a nuisance, recites that the company, by filling up parts of a certain pond without supplying suitable culverts or other means of drainage, have created and are maintaining a nuisance at said pond, it sufficiently informs the company of the nature and locality of the nuisance to be removed.

An order of a board of health, under the Gen. Sts. *c.* 26, § 8, for removing a nuisance, need not prescribe a mode for the removal; and, if it does prescribe a mode, the owner or occupant of the property on which the nuisance is found is not restricted thereto.

If an order of a board of health, under the Gen. Sts. *c.* 26, § 8, for removing a nuisance, prescribes a mode for the removal, and the owner or occupant of the property on which tne nuisance is found neglects to remove it, the board, in proceeding to remove it under § 10,

Is not restricted to that mode, but may adopt any which is suitable, even if, in so doing it is necessary to subvert soil adjoining that on which the nuisance exists.

In an action by a city, on the Gen. Sts. *c.* 26, § 10, against the party alleged to have caused a nuisance, to recover money expended by the board of health for removing it, if such party had no opportunity to be heard before the board, none of the findings or adjudications of the board preliminary to the incurring of such expenses are conclusive upon him, and all the facts on which the recovery is sought are open to be controverted and must be established by the proofs.

CONTRACT to recover twenty-three hundred and sixty-three dollars and eighty-six cents, with interest from the date of demand, expended by the plaintiffs in digging a canal for the purpose of abating a nuisance in the mill-pond in Salem.

The declaration alleged that the mill-pond in Salem was a large and ancient pond, the waters of which were accustomed to flow freely, in their natural course, into South River, and across which the defendants built their railroad originally on piles not interfering with free circulation of the water; but that afterwards, within twenty years before this action, they from time to time filled in with earth the structure, so as finally to make it solid, without providing sufficient culverts or other means of drainage, and thereby divided and confined the waters, and rendered them stagnant and noisome, " a source and body of filth, injurious to the public health, a cause of sickness, and a public nuisance," and maintained this nuisance so caused; that the board of health of the plaintiff city, on August 7, 1866, in consequence of complaints of the nuisance, examined into it in their official capacity, and on such examination passed an order (which was set forth) reciting that on that day, " after due examination had, it was found and determined by the board that the Eastern Railroad Company, by filling up parts of the mill-pond, so called, in Salem, without supplying suitable and safe culverts, sluiceways, trenches, and other means of drainage, have created and are maintaining a nuisance at said pond, which is dangerous to the public health and a cause of sickness to the inhabitants of the city," and requiring the company to remove " said nuisance and cause of sickness " within seven days after service of notice of the order, and directing the city marshal to proceed with sufficient force to remove it at the expense of the company if the company should not remove it within the time prescribed

that, on August 13, notice of this order was duly served on the defendants, who wholly neglected to comply with it; that thereupon, on November 20, the plaintiffs proceeded to remove the nuisance, and in so doing and for that purpose expended the sum for which this action was brought, in digging a canal (the items of expenditure being included in an account annexed, entitled "Eastern Railroad Company to City of Salem, Dr." for various items of "cash paid" for making the canal, amounting to twenty-three hundred and sixty-three dollars and eighty-six cents); and that, on January 12, 1867, they made demand on the defendants for payment, and were refused.

The answer denied that the waters of the pond were accustomed to flow freely into South River in their natural course, and alleged that on the contrary the pond was formed by a dam by which they were restrained from their natural flow. It admitted the filling up by the defendants of their track across the pond; but denied the allegations that they had not provided sufficient sluiceways, and had changed or obstructed the flow of water; and further denied that by any act of theirs any nuisance had been created or maintained; and set up that all things done by them in respect to filling up their road were in exact conformity with their rights under their charter and the acts in addition to it. With regard to the proceedings of the board of health, and the proceedings and expenditures of the plaintiffs to abate the alleged nuisance, the defendants pleaded ignorance; but alleged that the plaintiffs entered as trespassers upon the defendants' upland, and there, within the location of the railroad and not within the limits of the mill-pond, unlawfully attempted to dig a trench, such upland not being itself a nuisance nor having ever been changed by the defendants from its natural condition, and that it was for the cost of their wrongful acts thus done that they were attempting to charge the defendants in this action; but that, if the defendants' track and road bed across the pond did in fact cause a nuisance, the only right of the plaintiffs was to remove such track and road bed, or open suitable sluiceways through it. And they further alleged that all the acts of the plaintiffs in digging the trench had been

wholly inoperative to cause the water to circulate, or to remove the alleged nuisance, and that the pond was in the same condition as before the plaintiffs tampered with it. And finally they denied the right of the plaintiffs to sue on the alleged cause of action.

At the trial, before *Foster*, J., the records of the board of health were introduced in evidence; by which it appeared that on July 9, 1866, the board appointed a committee " to examine and report upon the condition of the culverts at the mill-pond," who on July 11 reported that " the bad odor arising from stagnant water and decaying matter on the bottom of the pond must be of necessity detrimental to the public health, and more especially as the season advances and hot weather continues; that the culverts under the railroad are insufficient in size to admit the free flowing of a body of water adequate to the purpose of purification;" and that they were " not cognizant of any means by which the nuisance can be abated other than the admittance of freely running water, and, in view of these facts, would recommend that the Eastern Railroad Company be notified to increase the size or number of their culverts, or both, or use such other means as the board may deem expedient, in order to abate the nuisance and preserve the public health;" that this report was accepted, and an order adopted that the clerk send a copy of it to the superintendent of the railroad; that at a further meeting on July 23 a petition was presented from William Silver and others, representing that " the mill-pond, by reason of imperfect drainage or circulation of water through the different parts of it, is in a condition to become a cause of sickness, is generating foul and offensive odors, and is a source of filth, and a nuisance which a due regard for the health of the community requires should be forthwith abated," and praying the board " to take measures speedy and efficient to remove the evil and abate the nuisance;" that this petition was referred to the mayor with a request to communicate with the president of the defendant corporation concerning it; and that then, on August 7, the order was unanimously adopted by the board which was set forth in the declaration.

The clerk of the board was called as a witness, and testified that he had no doubt that he sent a copy of the report of July 11 to the defendants as directed; and the mayor testified that on July 23 he sent the petition of William Silver to the defendants' president, through the superintendent of the railroad, and that it was returned the next day with a letter (which was introduced in evidence) from the superintendent to the station agent at Salem, which stated that the superintendent had shown the petition to the president, who said that he wished to do all he could in the matter; and the service upon the defendants, on August 13, of the order of August 7, was also shown in evidence.

It further appeared by the records of the board of health that on August 20 two members of the board were appointed a committee to " ascertain the ownership of land around the mill-pond, consult with the city solicitor, employ an engineer, if they see fit, and do what may be necessary to abate the nuisance;" and James Slade, a civil engineer, testified that he examined the mill-pond in August by direction of the board, and that a canal was dug, by his advice, connecting the upper with the lower part of the pond on the east side of the railroad track, within the location and upon the land of the railroad, six weeks being consumed in the work, which was done under direction of a committee of the mayor and aldermen; and the contractor for the digging testified that he did the work under a contract with the committee of the board of health. The records of the board of health further showed that on January 10, 1867, the chairman of the committee of the board appointed on August 20 made a report that, " in the judgment of the committee and the engineer, the canal is in successful operation and is amply sufficient for the purpose of abating the nuisance complained of," and submitted a bill for the cost of the canal (being the same set forth in the declaration); and that this report was accepted, and the city treasurer was directed to send the bill to the defendants' treasurer and a certified copy of it to the defendants' president, with a demand for its payment. It was admitted by the defendants that such demand was made upon them on the same

day; and it appeared that the original bills of the engineer, the contractor for the digging, and the other workmen on the canal were made against the city, and presented at first to the mayor and aldermen and by them sent to their committee on accounts.

In answer to an inquiry by the judge, it was conceded "that only such small portion of the *locus* where the alleged injurious and offensive matter existed belonged to the railroad as was covered by their location."

The plaintiffs here rested, with the view of raising certain questions of law on the case as it stood; contending that the proceedings of the board of health were conclusive of the existence of the nuisance, and that the defendants could not controvert the propriety of the method adopted by the board for the removal of it.

The defendants contended that their charter, with its amendments, authorized the construction of their road across the mill-pond on the line which they occupied; that, having filled in and made solid that part of their road before the St. of 1856, *c.* 305, (which, for the purposes of the hearing, the plaintiffs admitted to be the fact,) the structure was justified by that statute;* that the action should have been brought in the name of the board of health, not of the city; that the adjudication of the nuisance by the board was without notice to the defendants; that the

---

\* § 1. "The location of the Eastern Railroad Company, and said railroad and its branches as the same are actually laid out and constructed in the counties of Essex, Middlesex and Suffolk, are hereby ratified and confirmed.

§ 2. "In order to correct any informality or insufficiency in the location of said railroad and its several branches heretofore filed, the said corporation is hereby authorized at any time within one year from the passage of this act to file with the county commissioners of Essex, Middlesex and Suffolk respectively new locations of said railroad and its several branches, defining the courses, distances and boundaries of such portions thereof as lie within the said counties respectively, in conformity with the actual construction of said railroad and branches as already built, which said new locations, when filed, shall be valid and sufficient in law to all intents and purposes; *provided*, that nothing herein contained shall affect the legal rights of any person to damages whose land may have been taken heretofore by said corporation and not settled for under the existing laws."

City of Salem *v.* Eastern Railroad Company.

order of August 7 was ineffectual to subject the defendants to any liability; for, 1. it was insufficient, in not clearly designating any nuisance to be abated; that, if the defendants' structure was the nuisance, it should have required that to be removed; and 2. it was indefinite, as to how the alleged nuisance was created; and 3. it was defective, in not specifying what the defendants were required to do and the mode in which they were required to do it; that it gave the defendants no notice that they were expected to dig a canal; and 4. it was unreasonable, in requiring the defendants to do in seven days what occupied the plaintiffs six weeks; and 5. it was premature, in providing directions to the city marshal to remove the alleged nuisance, before it could be known whether the defendants would remove it.

The defendants further contended that the plaintiffs could not recover on the case presented, because they had not proved as facts the existence of a nuisance, nor that, if it existed, it was caused by the defendants, nor that the mode adopted to remove it had been effectual.

The judge withdrew the case from the jury and reported it to the full court for determination of the preliminary questions of law indicated; reserving to the plaintiffs the right to offer evidence that the nuisance existed, and of its cause and the propriety of the mode adopted to abate it, if such evidence would maintain their action, and if, in the opinion of the full court, it should be necessary to proceed with the trial; but if, on the evidence recited, the plaintiffs would be entitled to a verdict, and it should not be competent for the defendants to dispute any of those issues nor the reasonable character of the expenditures, then the defendants to be defaulted; or if, on the whole case, the plaintiffs could not recover, then the defendants to have judgment.

*S. Bartlett & J. C. Perkins*, for the plaintiffs.

*S. B. Ives, Jr.*, for the defendants.   1. An action on the Gen. Sts. *c.* 26, § 10, must be brought in the name of the board of health, not of the city.   *Parks* v. *Mayor & Aldermen of Boston*, 8 Pick. 218.   *Fay, petitioner*, 15 Pick. 243.

2. The St. of 1856, *c.* 305, is a bar to this action.   The case

finds that, at the time of this enactment, the defendants' causeway across the mill-pond was a solid structure, substantially as it now exists; and by the statute not only was the location of the road affirmed, but the road itself, as actually built, was declared to be a legal and authorized structure. It was, in effect, a new grant, affirming the old one and all acts done under it. If now this structure, built before 1856, is a nuisance, or a cause of nuisance, and the board of health of Salem have power to declare it such, and compel its abatement, what validity or effect has the statute? To say that the legislature have no power to legalize a nuisance does not answer the argument, which need not go farther than to claim for the statute that it is a legislative declaration that the structure of the road is not a nuisance; and if this declaration of the legislature conflicts with the finding of the board of health of Salem, these defendants are not to suffer for preferring to act under the statute. But it is not correct that the legislature may not make that legal and no nuisance which would otherwise be a nuisance. There never was a railroad charter which did not authorize the doing of acts so far affecting the rights of individuals or the public as to create what would constitute private or public nuisances but for the grant. County commissioners also may not locate highways over navigable waters; and any highway so laid out is a public nuisance; but the power of the legislature to pass acts giving such authority has been frequently affirmed. By their charter, the defendants received a grant of power to build their road, subject only to the liability to pay all damages caused by such building. This includes only damages to individuals, as distinct from the public. If the public is injured, as by the obstruction of highways, navigable streams, or even waters not navigable, the grant itself is a plenary release of all liability. And therefore, if this structure as built across the mill-pond was injurious to the public, or might in the future be injurious to the public, the charter, and the legislative recognition of the work done under it, were a release for all such injuries. The convenience and welfare of the public, in distinction from those of individuals, are in the hands of the legislature. If it grants the power to do injury to

such interests, there is no other power which can intervene, *Renwick* v. *Morris*, 3 Hill, 621; *S. C.* 7 Hill, 575.

3. The action of the board was defective in being taken without giving to the defendants any opportunity to be heard upon any question affecting their liability. The first communication to them is, to state it in the strongest way, a notice to increase their culverts, or " take such measures as the board may deem necessary," but with no intimation that they might be heard on the question; the next is notice of the pendency of a petition which does not name them; and then comes a final and definite requirement to do something. Nor, until August 13, was there any suggestion that any action under the statute was contemplated; and this is the conclusive answer to any suggestion that they never asked for a hearing. They had no notice which could possibly suggest to them that it was proposed to do anything affecting their interests.

Notice was required, and the defendants had a right to be heard. *Belcher* v. *Farrar*, 8 Allen, 328, involves questions as to the right of the board of health to act summarily and without notice in regard to suppressing offensive trades; and it was held that such power existed. But the decision is put solely on the ground that an appeal was distinctly provided by the statute; and the chief justice expressly says that the court would assume that notice to the parties was required, in the absence of special provision, if the right of appeal was not given. The present case comes within this principle, for, in regard to proceedings under the Gen. Sts. *c.* 26, §§ 7–10, no appeal is provided. The position of the plaintiffs leads to the extraordinary doctrine, that these defendants, without their own consent, shall be compelled to pay to the plaintiffs twenty-three hundred dollars expended in abating an alleged nuisance, without having ever had an opportunity to be heard on the question whether a nuisance actually existed, whether it was caused by them, or whether the money has ever done any good in the way of removing it.

4. The order of August 9 is wholly ineffectual in not describing the nuisance to be removed by the defendants. The preamble recites that the defendants, " by filling up parts of the

mill-pond," (that is, by their causeway,) "without supplying suitable and safe culverts, sluiceways, trenches and other means of drainage, have created and are maintaining a nuisance;" and it is then ordered that they be required " to remove said nuisance and cause of sickness" within a specified time. If the nuisance is the causeway, shall they remove their structure, and stop the running of cars between Boston and their whole line east of Salem, at the bidding of the board of health of that city? It is to be observed that the order does not require them to open larger or more numerous culverts. If the nuisance is the offensive matter, the case finds that that was not upon the land of the defendants. So that the order requires them, either to remove their road bed, or to remove a nuisance from land not their own. *Rogers* v. *Barker*, 31 Barb. 447. And further, the statute does not apply to such a case as this. The remedy given is against the " owner or occupant " of the place where a nuisance exists, which language has no reasonable application to the case of a person creating a nuisance on his neighbor's land. It would seem that the board of health must look to the actual owner or occupant for the remedy of a public nuisance; while he would have his action against the party causing the injury in the first place. And, as to the means which in this case were adopted, by cutting a canal for a hundred rods, not only was there never any notice given to the defendants that such a plan was in contemplation, but the records fail to show that the board of health ever voted or determined upon any such plan; at least, until after they had caused the order of August 7 to be served on the defendants. But the statute does not authorize the board to do anything, at the expense of the owner or occupant, except only what such owner or occupant has failed to do; and these defendants cannot be said to have failed to dig a trench by the side of their road bed, because they failed to comply with an order which did not suggest such a plan.

5. The defendants, however, take broader ground than this, and submit that the powers of the board of health do not extend to the case at bar; that a dam across a stream not navigable, or a pond, is not and cannot be *per se* a nuisance injurious to the

public health, although it may be a private nuisance. It is true that it may cause a nuisance; but the board of health have never had any authority to remove that which causes a nuisance. *Rogers* v. *Barker, ubi supra. People* v. *Townsend,* 3 Hill, 479. *Bloomhuff* v. *State,* 8 Blackf. 205.

6. The plaintiffs' action cannot be maintained upon any evidence. In order to create the statute liability, such proceedings ought to have been had before the board as would make evidence as to the existence of the nuisance, or the responsibility of the defendants in causing it, not only unnecessary but also incompetent. Under the statute, the board of health is a tribunal with judicial powers; and, if they had given the defendants due notice and an opportunity to be heard, and had then adjudicated that the road bed and structure of the defendants was of itself a nuisance, and had ordered them to abate it as such, it may or may not be doubted whether such adjudication would have been final. *Baker* v. *Boston,* 12 Pick. 184. But the position that a vote, without notice or hearing, and especially a vote which does not declare what is a nuisance, or what is to be abated, or by what means, is a final and conclusive adjudication of the fact that a nuisance existed and the defendants caused it, so that it dispenses with affirmative proof, and forbids the introduction of negative evidence, is surely untenable. If in this case the defendants can be held liable on this evidence, it is difficult to see how it accords with the provisions of the Bill of Rights. But the plaintiffs offered no evidence that the nuisance was in fact removed by what they have done, and what they ask the defendants to pay for. Assuming every other necessary fact to have been found in favor of the plaintiffs, this question remains. The statute provides that the board may cause the nuisance to be removed, and " all expenses incurred thereby shall be paid " by the person liable. The " expense incurred thereby," means the expense reasonably incurred ; and that is a question for the jury.

WELLS, J. This action is brought under Gen. Sts. *c.* 26, § 10, against the defendants as the party who caused the nuisance complained of and alleged to have been removed. Several objections are made to the maintenance of the action.

1. It is contended that the action should have been brought in the name of the board of health, instead of the city of Salem. But it is clear that the functions of the board of health are official merely. They have no interest in the question; they do not expend their own money in removing the nuisance, and have no funds in their charge for that purpose; and consequently they can have no claim to the payment required by the statute. The expenses are incurred by the city, whose officers they are; and payment is to be made to the city. Gen. Sts. *c.* 26, § 49. The action is therefore properly brought in the name of the city. *Winthrop* v. *Farrar*, 11 Allen, 398. The cases cited by the defendants are cases of *certiorari*, which necessarily is directed to the board or tribunal whose proceedings are brought in question.

2. It is contended that the act of the legislature of 1856, *c.* 305, which was passed after the completion of the embankment of which complaint is made, legalized that structure as it now exists, and so is a bar to the proceedings of the board of health against the corporation. But it seems to us clear that no such purpose could have been contemplated by that statute. Its apparent purpose is to remedy some deficiency in the authority originally conferred upon the corporation, or to confirm some real or supposed departure therefrom; and in that view it should be construed as if it formed a part of the original grant of powers. It cannot be supposed that the legislature intended to exempt the corporation from responsibility for unnecessary or unreasonable encroachments upon either private or public rights by its mode of constructing the road or its embankments. Such operation can be given to legislative grants of authority only when it results necessarily from the application of the grant to the object which is to be attained thereby. *Springfield* v. *Connecticut River Railroad Co.* 4 Cush. 63.

3. The proceedings of the board of health are said to be defective, because taken without previous notice to the defendants and opportunity to be heard. The evidence tended to show that the defendants were notified of the pendency of proceedings, and of the action taken by the board of health from time to time

but there was no such notice beforehand as would give the defendants an opportunity to appear and be heard upon the contemplated action of the board ; and there was no hearing upon any of the questions before them.

The statute does not require any previous notice. Notice must be given of general regulations prescribed by the board of health under §§ 5 and 6, before parties can be held in fault for a disregard of their requirements. But, although such general regulations may seriously interfere with the enjoyment of private property, and disturb the exercise of valuable private rights, no previous notice to parties so to be affected by them is necessary to their validity. They belong to that class of police regulations to which all individual rights of property are held subject, whether established directly by enactments of the legislative power, or by its authority through boards of local administration. *Baker* v. *Boston,* 12 Pick. 184, 193. *Commonwealth* v. *Tewksbury,* 11 Met. 55. *Commonwealth* v. *Alger,* 7 Cush. 53, 85. *Belcher* v. *Farrar,* 8 Allen, 325. The authority of the board of health in respect to particular nuisances stands upon similar ground. Their action is intended to be prompt and summary. They are clothed with extraordinary powers for the protection of the community from noxious influences affecting life and health, and it is important that their proceedings should be embarrassed and delayed as little as possible by the necessary observance of formalities. Although notice and opportunity to be heard upon matters affecting private interests ought always to be given when practicable, yet the nature and object of these proceedings are such that it is deemed to be most for the general good that such notice should not be essential to the right of the board of health to act for the public safety. Delay for the purpose of giving notice, involving the necessity either of public notice or of inquiry to ascertain who are the parties whose interests will be affected, and further delay for such hearings as the parties may think necessary for the protection of their interests, might defeat all beneficial results from an attempt to exercise the powers conferred upon boards of health. There are many cases in

which powers of determination and action, of a *quasi* judicia. character, are given to officers intrusted with duties of local or municipal administration, by which not only the property but the lives of individuals may be affected, and which, from their nature, must be exercised, finally and conclusively, without a hearing, or even notice to the parties who may be affected. Of this class are the authority of fire-wards or other officers to direct buildings to be demolished to prevent the spreading of fires; Gen. Sts. *c.* 24, § 4; *Taylor* v. *Plymouth*, 8 Met. 462; of magistrates to require aid and to use force, armed or otherwise, to suppress tumults; Gen. Sts. *c.* 164, §§ 4, 6; of the mayor or other officers to call out a military force for like purposes. Gen. Sts. *c.* 13, § 134. *Ela* v. *Smith*, 5 Gray, 121.

The necessity of the case, and the importance of the public interests at stake, justify the omission of notice to the individual. When the statute authorizing the proceedings requires no notice, their validity without notice is not to be determined by the apparent propriety of giving notice in the particular case, but by considerations affecting the whole range of cases to which the statute was intended to apply.

4. It is objected that the order addressed to the defendants, in pursuance of § 8, does not properly describe the nuisance, nor direct the mode in which it was to be removed. But it informs the defendants of the nature and locality of the nuisance; and that is sufficient to enable their officers to apply the remedy, if they should see fit to do so. It is not the purpose of the order to direct in what mode the party shall proceed to remove the nuisance. It directs the end to be accomplished, leaving the party to adopt any effectual mode which he may choose. No such order is required to be issued to any party except the owner or occupant of the property upon which the nuisance is found. The manifest purpose of this provision is to enable the owner or occupant to remedy the evil in the mode least detrimental or offensive to himself, and thus secure himself and his premises from the intrusion of the agents of the board of health. If the owner or occupant neglect to remove the nuisance, the board of health are then at liberty to enter upon the private property

where it exists, and take such measures as they may see fit for its removal.

It is urged that the board of health can do only what the owner has failed to do. That may be true; but that is, to remove the nuisance. If the previous report of the committee, accepted and sent to the defendants, be taken as a part of the order afterwards made, the defendants were not bound to adopt that mode of remedying the evil, if another mode could be made to answer the end sought. Neither are the board of health restricted to that mode, when they come to act. They are not only at liberty, but it is their duty, to exercise their best discretion at the time.

It is not to be inferred, from the fact that this preliminary order is required to be served only upon the owner or occupant of the land upon which the nuisance is found, that the subsequent proceedings for recovery of the expenses of removal are limited to such owner or occupant. By the express terms of § 10, they may be claimed of any "other person who caused or permitted" the nuisance. As to such other person, it is only requisite that he "has had actual notice from the board of health of the existence thereof."

5. It is argued by the defendants that a dam or railroad embankment, although it may be the cause of that which constitutes a nuisance, is not, and cannot be, *per se*, a nuisance injurious to the public health; and therefore that the board of health have no power over the land and structures of the defendants, under the statutes in question. It would seem to be the natural construction of these statutes to apply the terms "nuisance, source of filth, or cause of sickness," to those obvious and palpable objects from which danger to public health directly arises. A permanent structure, like a dam, bridge, or embankment, may, by the manner in which it is used, or in which it obstructs the passage of water, become so injurious to public rights as to subject the party maintaining it to be prosecuted by indictment. *Eames* v. *New England Worsted Co.* 11 Met. 570. But it may well be questioned whether it can be abated in this summary manner, as being in itself a nuisance such as is contemplated by

this statute. That question, however, is not involved here. The whole proceedings designate the deposits in the mill-pond as the subject of the action of the board of health ; and the claim upon the defendants is made upon the ground of causing, by their structure, the nuisance in said pond. The only question, therefore, that can arise in regard to their power to affect the defendants' land is, whether they were justified in entering upon it to dig a trench for the purpose of removing or preventing the nuisance existing upon lands of other proprietors adjoining.

The importance of the duty imposed upon the board of health, the necessity of prompt and decisive measures to protect the public health, require a wide discretion in the use of means by which to " destroy, remove, or prevent " such cause of sickness. If it be necessary to the proper performance of their duty, they may, undoubtedly, in the exercise of their discretion, resort to means and measures which affect injuriously other lands than those upon which the manifestation of the cause of sickness is found. *Baker* v. *Boston*, 12 Pick. 184, 193. To what extent they may destroy, injure or appropriate private property other than that which constitutes or causes the nuisance ; when and in what mode compensation therefor is recoverable ; whether they may be held personally responsible, if they take or injure property unnecessarily or improperly ; are questions which need not now be determined.

6. The most important and most difficult question in the case relates to the effect of the orders of the board of health by which the existence of the nuisance was " found and determined ; " and that it was created and maintained by the defendants ; and which also directed its removal by the defendants.

The plaintiffs' counsel contend that the proceedings of the board of health are *quasi* judicial ; and that the determinations and orders made by them in that capacity are adjudications conclusive against the defendants upon all the facts involved in those determinations. If this be so, the defendants are precluded from denying the existence and alleged cause of the nuisance, and their duty to remove it. We do not find in the proceedings of the board of health, as reported, any determination by the board

relative to the method of removal which was undertaken, other than by the subsequent adoption of a report stating the cost thereof, and that the trench was in successful operation. The record indicates another mode quite different from the one actually adopted. The propriety of that mode of removal, the reasonableness of the expenses, and the success or failure of the attempted remedy, would therefore be open to investigation upon either view of the case.

But the court are of opinion that, in a suit to recover expenses incurred in removing a nuisance, when prosecuted against a party on the ground that he caused the same, but who was not heard, and had no opportunity to be heard, upon the questions before the board of health, such party is not concluded by the findings or adjudications of that board, and may contest all the facts upon which his liability is sought to to be established. He is neither party nor privy to those adjudications; he has no right of appeal, and no other means by which to revise the proceedings or to correct errors, either of law or fact, therein. Parties similarly situated in respect to judgments in courts of law may impeach them collaterally. *Vose* v. *Morton,* 4 Cush. 27. " It is an essential principle of natural justice that every man have an opportunity to be heard in a court of law, upon every question involving his rights or interests, before he is affected by any judicial decision of the question." *Commonwealth* v. *Cambridge,* 4 Mass. 627. *Bradstreet* v. *Neptune Insurance Co.* 3 Sumner, 600, 607. In the case of *Belcher* v. *Farrar,* 8 Allen, 325, 328, it is intimated that even a general regulation, adopted by a board of health in accordance with the statute, which might operate to render valueless a large property by forbidding the prosecution of the business for which it was erected, would be invalid as in violation of "one of the fundamental principles of justice," but for a provision of the statute which gave to the party a right of appeal from the order enforcing the regulation, and upon such appeal to have the whole matter involved in the issue tried by a jury.

The law applicable to judgments rendered upon default of parties who have not been duly served with process affords anal-

ogies which bear upon this question. Such judgments in this state are treated as valid until reversed, for the reason that the parties have an adequate remedy by review or writ of error. When such judgments are rendered in the courts of another state, the party is not remitted to the foreign jurisdiction to seek his relief; but, in any attempt to enforce them against him personally, or to use them as evidence against him, he may deny their validity, and controvert any and all facts upon which they purport to be founded. *Finneran* v. *Leonard,* 7 Allen, 54. *Watson* v. *New England Bank,* 4 Met. 343. *Phelps* v. *Brewer,* 9 Cush. 390. They are nevertheless held to be valid and conclusive, so far as they may operate upon property found within the jurisdiction of the courts where they are rendered; so that a title acquired in such property by means thereof will be sustained, even where the judgment itself is allowed to have no other force. And, if the operation of such a judgment be to appropriate a debt there due to the defendant, and apply it in satisfaction of the judgment, under proceedings of foreign attachment or otherwise, it will be a sufficient protection to the garnishee for the payment of his debt in that mode, provided he has himself conducted with good faith and diligence; and he may rely upon the judgment as conclusive for that purpose, whenever and wherever afterwards he may be called upon again for payment. *Bissell* v. *Briggs,* 9 Mass. 462. So far as such judgments can be supported as proceedings *in rem,* they are valid and conclusive. But as adjudications *in personam* they are of no binding force. This is the general rule, not only in Massachusetts, but elsewhere in this country. *Bradshaw* v *Heath,* 13 Wend. 407. *Cochran* v. *Fitch,* 1 Sandf. Ch. 142. 1 Greenl. Ev. §§ 541–543. *Downer* v. *Shaw,* 2 Foster, 277. *Wood* v. *Watkinson,* 17 Conn. 500.

Adjudications which stand merely as proceedings *in rem* cannot, as a general rule, be made the foundation of ulterior proceedings *in personam,* so as to conclude a party upon the facts involved. In most cases of suits which are in their nature proceedings *in rem,* and so designated, personal or public notice to parties interested is required to be given; and they are entitled

to appear and be heard, and to have such rights in relation to the proceedings as are accorded to parties litigant. Against such parties, whether they have actually appeared or not, the adjudication is held to be conclusive upon the facts which are made the ground of the judgment, when those facts are again brought in question in ulterior or collateral proceedings. But such effect is due to the fact that they were so made parties to the proceedings. *The Mary*, 9 Cranch, 126, 144. *Whitney* v. *Walsh*, 1 Cush. 29. *Scott* v. *Shearman*, 2 W. Bl. 977. *Hollingsworth* v. *Barbour*, 4 Pet. 466, 474.

When there appears to have been no notice to the parties to be affected, and no opportunity afforded them to be heard in defence of their rights, whatever operation the adjudication may have upon the *res*, and however conclusive it may be held for the protection of those who act, or derive rights under it, the adjudication itself can have no valid operation against parties who may be named in the proceedings. If it proceed to declare any obligation or impose any liability upon such parties, they may, in any subsequent suit to enforce it, deny the validity of the judgment, and controvert the facts upon which it was based. *Boswell's Lessee* v. *Otis*, 9 How. 336. *Harris* v. *Hardeman*, 14 How. 334. *McKee* v. *McKee*, 14 Penn. State, 231.

We think that these principles apply to the proceedings of a board of health. Their determination of questions of discretion and judgment in the discharge of their duties is undoubtedly in the nature of a judicial decision ; and, within the scope of the power conferred, and for the purposes for which the determination is required to be made, it is conclusive. It is not to be impeached or set aside for error or mistake of judgment; nor to be reviewed in the light of new or additional facts. The officer or board to whom such determination is confided, and all those employed to carry it into effect, or who may have occasion to act upon it, are protected by it, and may safely rely upon its validity for their defence. It is in this sense that such adjudications are often said to be conclusive against all the world ; and they are so, so far as the *res* is concerned. The statute and the public exigency are sufficient to justify the omission of previous

notice, hearing and appeal. But this exigency is met and satisfied by the removal of the nuisance. As a matter of police regulation, the proceedings and the authority of the board end here. When the city comes to seek its remedy over; to throw upon some individual, supposed to have caused the nuisance, the expenses of removal which it has incurred in the first instance as the representative of the public; there seems to be no reason, founded either in the public exigency or in the justice of the case, that requires or warrants the holding of such *ex parte* adjudications as final and conclusive to establish the facts upon which the claim rests.

It is said that this obligation is imposed upon the party by the express terms of the statute, as the direct and necessary consequence of a disregard of the order from the board of health. If this were so, we should feel obliged to hold that no adjudication could be made in the premises, and no order issued, until the parties had been notified and heard in their defence. *Capel* v. *Child*, 2 Cr. & Jerv. 558. *Bonaker* v. *Evans*, 16 Q. B. 162. But we do not think that this is the effect of the statute. However it may be as to the penalty imposed upon the owner or occupant by § 8, it is clear that it cannot be so with the liability incurred under § 10. That liability is imposed upon a class which does not correspond with the one to which the order is required to be addressed. It differs by including any " other person who caused or permitted" the nuisance. No order is required to issue to such other person. And, if it should issue, it would be without authority of law. It could have no other effect than as notice to the party. Actual notice from the board of health of the existence of the nuisance is all that such " other person" is entitled to receive. But notice of the existence of the nuisance does not put him in the position of a party to the proceedings from which the adjudication results; and even this notice was not required in the earlier statutes. Rev. Sts. *c.* 21, § 11.

The jurisdiction necessary to give validity to judicial decrees which will be binding *in personam* is not acquired from the mere fact of the presence of the person within the territorial limits over which the tribunal may exercise jurisdiction. At common

**law,** the actual presence of the party in court was required ; and, if he did not appear, his presence was enforced by peremptory process. It is only by force of statutes that judgments may be entered upon default after service of process or notice upon the party. *Picquet* v. *Swan*, 5 Mason, 35. Judgments are no more invalid when the defendant is beyond the reach of the process of the court, than when, being within the jurisdiction, no opportunity is afforded him to appear and defend his interests. It is well settled also that, where there is jurisdiction for a special purpose only, any attempt to exercise a general power will be void as to the excess. *Bates* v. *Delavan*, 5 Paige, 299.

From the foregoing considerations we are led to construe the statutes in question as conferring no judicial power upon the board of health beyond that which is absolutely essential to the performance of their administrative functions for the accomplishment of the end contemplated, to wit, the summary abatement of nuisances of the class indicated. The absence of any provision for previous notice and hearing, the summary execution of the order without means of redress or relief by appeal or otherwise against error and injustice, would make the proceedings violate the fundamental principles of justice universally recognized, if they should be held to establish, by an unalterable and absolutely conclusive decree, the personal liability of the parties who might be named by the board of health as having caused or permitted the nuisance. We cannot yield to a construction which would lead to such results. By the narrower construction which we have indicated, the statute will have its full and effective operation as a police regulation, while parties who are charged with responsibility for the expenses incurred will not be deprived of that full opportunity of defence which is essential to the due administration of justice in whatever form of judicial proceeding it may be undertaken.

The record of proceedings of the board of health is competent evidence in the present case for some purposes. It proves the fact that such proceedings were had, which is a necessary preliminary step. So far as the proceedings were within and in accordance with the authority and duties of the board, they are

entitled to the presumption that whatever was done was rightly done; and may be held as *primâ facie* evidence of the existence of a nuisance which warranted the board of health in taking action and incurring expense for its removal. But it is not evidence that the nuisance was caused by the defendants, in the manner stated, or in any manner; and all the facts, upon which it is sought to charge the defendants with liability, are open to be tried and determined by the proofs in the case.

*The case will therefore stand for trial.*