Weil v. Ricord.

WEIL vs. RICORD and others.

1. The police powers vested in municipal bodies, by which the public peace, health, comfort, and convenience, and the general welfare are secured or promoted, are not only respected, but maintained, by the courts, which, as a matter of public policy, will not interefere with or disturb municipal bodies in the legitimate exercise of those powers. It is only when those bodies transcend their limits in that respect, that the aid of the courts can be successfully invoked to restrain them or to visit upon them the injurious consequences of their acts.

2. The board of health of the city of Newark in the ligitimate exercise of its powers, cannot absolutely prohibit the carrying on of a lawful business, not necessarily a nuisance, but which may be conducted without injury or danger to the public health, and without public inconvenience. They will be confined in their interference with the lawful business of any individual, to such interruptions as may be reasonably necessary to enable them to abate any nuisance he may create in conducting it.

3. A person cannot be deprived of the use of his property for the purposes of his lawful business, by force of an adjudication of a board of health, under its powers over the matter of nuisances, made without notice to him, and without giving him an opportunity to be heard in his defence.

4. A grant of special powers to a corporation, will not be enlarged by intendment to include a power not expressly conferred.

On bill and affidavits. Motion for injunction to restrain defendants, who constitute the board of health of the city of Newark, from prohibiting the complainant from carrying on, on his premises in that city, his business of hide curing.

*Mr. S. H. Baldwin*, for the motion.

*Mr. A. G. Sayre*, contra.

THE CHANCELLOR.

The complainant, about a year ago, erected, upon certain land and premises, in the city of Newark, owned by him, buildings for the purpose of carrying on there the business of salting and curing hides, and ever since then has carried on

the business there.  In connection therewith, as a necessary part thereof, (the purchasers of the fresh or green hides being required by the butchers by whom they are sold, to buy with them what is called the rough fat of the animal,) he has carried on the business of receiving and disposing by sale there of rough fat, which he has been required to take with the hides.  On the 18th day of August, 1873, he was served with the following notice by the health inspector, acting under, and by the direction of the board of health of the city :

" The business of receiving green hides and rough fat, carried on upon the premises now occupied by you, on Norfolk street, near South Orange avenue, in the city of Newark, having been declared a nuisance by the board of health of the city of Newark, you are hereby notified and required forthwith to abate the said nuisance, and discontinue the said business, and to remove the said nuisance from the premises aforesaid ; and in case of your failure to abate the said nuisance, and remove the same from the said premises for the space of five days after the service of this notice upon you, the board of health, of the city of Newark, will proceed to abate the said nuisance, and to remove the same from the said premises, according to law.

"ALBERT MUNN, *Health Inspector.*
" To HENRY WEIL, ESQ.

" Newark, N. J. August 18th, 1873."

This notice was based on the following adjudication of the board of health :

" WHEREAS, one Henry Weil is engaged in the business of receiving green hides and rough fat upon the premises now occupied by him, on Norfolk street, near South Orange avenue ; and it appearing to the board of health, that the said business, so carried on, is offensive and cause of great annoyance to the residents of the neighborhood, the board of health do esteem and declare the said business, upon the said premises, a nuisance, and do direct that the owner thereof be notified, according to law, to abate the same, and that, upon his

failure so to do, the board of health will proceed to abate the same according to law."

It appears that the complainant had no notice of the making of this adjudication against him or his property, nor was there any opportunity afforded him of being heard on the subject; that on the 28th of August, he was informed by the board that he might still be heard, as the adjudication was not final; that on that day, at the proper time and place, he attended, pursuant to the directions given him, to be heard before the board, but was not heard, because there was not a quorum, and he was then notified to be present on the following evening, and attended with a like result.   On the 30th of August he was, he alleges, notified that his place must be shut up, at any rate, and that after Monday, the 8th day of the following September, he would not be permitted to receive any stock, hides, or fat on his premises, and that any hides or fat there found, would be seized and removed by the board of health.

On receiving this notification, he filed his bill to restrain the board, and its officers and agents, from interrupting or interfering with him in, or preventing him from prosecuting his business on his premises; and from removing, or attempting to remove his stock and material therefrom; and from preventing and delaying the daily delivery and receipt of fresh, rough fat on the day the animal from which it is taken is killed, provided it be removed from the premises in twenty-four hours; and from obstructing or closing up his premises.   An order to show cause why an injunction should not issue, was granted.

The charter of the city of Newark, (*Pamph. L.*, 1857, *p.* 116,) empowers the common council, among other things, "to establish a board of health, to define its powers and duties, and provide for the protection and maintenance of the health of the city; to abate or remove nuisances of every kind, and to compel the owner, or occupant, of any lot, house, building, shed, cellar, or place wherein may be carried on any business or calling, or in or upon which there may exist any matter or

thing, which is or may be detrimental to the health of the inhabitants, to cleanse, remove, or abate the same, from time to time, as often as they may deem necessary for the health of the inhabitants of the city, at the expense of the owner or occupant thereof."

By ordinance of March 20th, 1858, (*Municipal Laws, p.* 167,) the board of health is constituted. It is composed of the mayor, the members of the committee on public health, of the common council, and the health physician, for whose appointment by the common council the ordinance provides. The mayor is to be president, and the city clerk, secretary.

Power is, by the fourth section of the ordinance, conferred on the board to make, and, by order, to direct to be made, diligent inquiry with respect to all nuisances, of every description, which are, or may be injurious to the public health, and to abate the same in any way or manner they may deem expedient.

The ordinance provides that every person who shall be served with a copy of any order certified by the clerk, made by the board of health, under the powers conferred by that section, and shall refuse or neglect to obey or comply with the same, shall forfeit and pay $50 for each and every offence.

The duties of the health inspector are to look for, and report nuisances, and to execute the orders and resolutions of the board, in such manner as the board shall direct.

By the fourth and fifth sections of another ordinance, (an ordinance concerning nuisances, approved May 8th, 1858, *Mun. Laws, p.* 186,) it is ordained that it shall be lawful for the health inspector, under the direction of the board of health, to order the owner of any lot, house, building, shed, cellar, or place wherein may be carried on any business or calling, or in or upon which there may exist any matter or thing which is, or may be detrimental to the health of the inhabitants, to cleanse, abate, or remove the same, from time to time, as often as they may deem necessary for the health of the inhabitants of the city; and every person who shall refuse or neglect to obey such order, shall forfeit and pay $10

Weil v. Ricord.

for every twenty-four hours during which he shall so neglect or refuse. And whenever the board of health shall deem it advisable, for the public health of the city, forthwith, to abate or remove any nuisance in the city, it shall be the duty of the health inspector, under the board of health, to cause the same to be abated or removed, without delay, at the expense of the owner or occupant of any lot or premises upon which the same may exist.

By a supplement to the charter, approved February 28th, 1871, *Pamph. L.*, *p.* 325, the expense of the abatement, removal, or cleansing of a nuisance, if done by the board of health, is made a lien upon the entire premises on which the nuisance is, and provision is made for collecting it accordingly.

The above is all the legislation on the subject, bearing on the question now before the court.

Among the objects sought to be secured by municipal government, there is none more important than the preservation of the public health, and, therefore, the imperative obligation rests on the government of every city, promptly, to abate or remove all nuisances by which the public health may be affected. It is no less its duty to provide, in like manner, for the comfort and convenience of the inhabitants within its limits. To these ends, such governments are clothed with police powers. These being among the powers which are of the most importance to the inhabitants, those by which the public peace, health, comfort, and convenience, and the general welfare are secured or promoted, are not only respected, but maintained by the courts, who, as a matter of public policy, will not interfere with or disturb municipal bodies in the legitimate exercise of those powers. It is only when those bodies transcend their limits, in that respect, that the aid of the courts can be successfully invoked to restrain them, or to visit upon them the injurious consequences of their acts. The necessities of the community ofttimes require the promptest and most positive action. There are times when public health is the object of paramount concern, and

Weil v. Ricord.

the law wisely lodges in municipal bodies, the discretion and power adequate to such emergencies, a power and discretion whose existence is, at all times, necessary to secure the public health, comfort, and convenience.

In the case before me, the board of health of the city of Newark have adjudged the complainant's business to be a nuisance, and have directed him to "abate" it, notifying him that, upon his failure to do so, the board will proceed to abate the nuisance, and remove it from the premises.

On the argument of this motion, the counsel of the defendants admitted that the business might be so conducted as not to be a nuisance, and that, under their notice, the board intend, unless restrained by this court, to prohibit the complainant from further using his premises for his business. It appears, from the evidence, that the complainant's business was not, at the time when the adjudication was made, nor has it been, at any time since, so carried on as to be a nuisance. While I am unwilling to disturb the board in the exercise of their powers, within their legitimate limits, I am constrained to prohibit them from inflicting, by means of their prohibition, irreparable injury upon the complainant.

The defendants claim that, whatever may be said of the complainant's business at the time of, and since the adjudication, it was, up to a period shortly before the service of the written notice upon him, so conducted as to be a nuisance. There is no evidence before me to show that this is not true. If it is, their right to require the complainant to abate the nuisance was undoubted. But such action differs, materially, from absolute prohibition.

The question, in this case, is not as to whether the court would interfere with the action of the board in abating a nuisance, but whether the board, in the legitimate exercise of its powers and discretion, may absolutely prohibit a lawful business, not necessarily a nuisance, but which, on the other hand, may be carried on, in the midst of a dense population, without injury or danger to the public health, and without public inconvenience.

Though the charter authorizes the common council to establish a board of health, and define its duties, and provide for the protection and maintenance of the health of the city, this is not a grant of power to prohibit the exercise of a lawful occupation, not *per se* a nuisance, and not so conducted as to be an annoyance to the public. And, if it were, the common council, in establishing the board, and defining its powers and duties, and providing for the protection and maintenance of the public health, have not conferred such power on the board. The fourth section of the ordinance concerning nuisances, the section under which the action complained of, in this case, was taken, adopts the language of the charter, in the grant of power over the subject of nuisances, without amplifying it in any way.

The power claimed, in this case, is not expressly given by the legislature, and the grant of authority over the subject, contained in the charter, will not be enlarged by intendment, to such an extent as to include it. *Rex.* v. *Croke, Cowp.* 26 ; *Warne* v. *Varley,* 6 *T. R.* 443 ; *Dwarris on Statutes* 750 ; *Kennedy* v. *Phelps,* 10 *Louisiana Ann. Rep.* 227.

This last case was very similar in its features to the one now before the court. The plaintiff, in that suit, was carrying on the business of curing hides, in the city of New Orleans. Police powers against nuisances had been expressly granted to the city. The street commissioner was ordered by the city council, by resolution, to notify the owner or occupant of the plaintiff's premises, used for his business, to discontinue the use of them for that purpose, and on failure to comply with the notice, to have the premises closed up, as a public nuisance, without delay, under the city ordinance concerning nuisances. The street commissioner gave the plaintiff notice that he was required to discontinue the use of the premises for the purpose of curing hides, within one day from the service of the notice, and that, in default of compliance with the requirements of the notice, he would be dealt with as directed in the ordinance and the resolution of the city council. The ordinance provided that, whenever any

workshop, manufactory, or like establishment, within the limits of the city, exhaled fœtid or offensive odor, or vapor, it should be the duty of the police officer to examine the premises; and it authorized him, for that purpose, to enter all such establishments, between the rising 'and setting of the sun, and if such odor, in his opinion, was sufficient to vitiate the air, or impair the health of the inhabitants, he was thereby directed to notify the owner or proprietor thereof, in writing, requiring him to cleanse the same, or discontinue all work on the premises noxious to the health of the city, and within such time as the police officer might designate. The ordinance further provided that, at the expiration of such time, should such person neglect to comply with the notice, he should be liable to a fine, for the use of the city, of from $10 to $100 for each week he should so neglect. The plaintiff, in his petition in the action, averred that the street commissioner threatened, under the resolution, to shut up his establishment, and prevent him from carrying on his business, and prayed an injunction restraining him from closing the establishment, or preventing the plaintiff from carrying on the business. The injunction was granted. The city intervened, and was allowed to defend the suit. Though the court gave judgment for the city, it did so on the ground that it did not appear, but that the city authorities intended, notwithstanding the language of the resolution, to proceed merely under the ordinance, by prosecution before a legal tribunal, to collect the fine imposed by the ordinance.

The board of health of the city of Newark have no authority to prevent any inhabitant from carrying on any lawful business, not necessarily a nuisance, in such manner as not to be a public nuisance.

There is another consideration in this case, worthy of notice. It is an essential principle of natural justice, that every man have an opportunity to be heard, upon any question involving his rights or interests, before he is affected by the decision. The adjudication of the board of health, in this case, even if its power to make it were admitted, could

not be sustained, for it was made without notice to the complainant, or any opportunity given to him to be heard in his defence. The plaintiff cannot be deprived of the use of his property for the purposes of his business, by force of an adjudication thus made.

The board of health may proceed, without notice, in case of public emergency, to abate a nuisance; but their adjudication going beyond this, to the extent of depriving a person of the use of his premises for the future, in his lawful business, would, if otherwise lawful, be invalid, if an opportunity had not been afforded to him to be heard before the making of the adjudication. *Belcher* v. *Farrar*, 8 *Allen* 325; *City of Salem* v. *Eastern R. R. Co.*, 98 *Mass.* 431.

In Belcher *v.* Farrar, it was intimated that even a general regulation, adopted by a board of health in accordance with the statute, which might operate to render a property valueless, by forbidding the prosecution of the business for which it was erected, would be invalid, as in violation of one of the fundamental principles of justice, but for a provision of the statute which gave to the party a right of appeal from the order enforcing the regulation, and upon such appeal, to have the whole matter involved in the issue tried by a jury. The court say : " It would violate one of the fundamental principles of justice, to deprive a party, absolutely, of the free use and enjoyment of his estate, under an allegation that the purpose to which it was appropriated, or the mode of its occupation, was injurious to the health and comfort of others, and created a nuisance, without giving the owner an opportunity to appear and disprove the allegation, and protect his property from the restraint to which it was proposed to subject it."

The defendants will be enjoined from preventing the complainant from prosecuting his business on his premises, so long as it shall be so conducted as not to be a public nuisance. If, however, he shall so conduct it as to create a public nuisance, he must, and ought to suffer the interruption which will be occasioned by the abatement of the nuisance.

In the interdict which I authorize, I do not propose to derogate in any degree from the lawful power or discretion of the board. I intend only to protect the complainant in his right to conduct, on his premises, a lawful business, not *per se* a nuisance, in such a manner as not to be a just cause of public complaint. In other words, the defendants must be confined, in their interference with the complainant's business, to such interruptions as may be reasonably necessary to enable them to abate any nuisance he may create in conducting it.