MUNN, HEALTH COMMISSIONER, v. CORBIN ET AL.

8 . 113
s24c 381

1. DENVER—HEALTH COMMISSIONER—ABATEMENT OF NUISANCE.
Circumstances may exist which seem to demand summary action for the protection of health and life when the officer upon whom authority for the purpose is conferred will not be held responsible for a destruction of the property which the exigencies of the situation appear to require. But where the necessity of immediate action does not exist, a judgment condemning the property must be the result of a trial before an authorized tribunal in a proceeding to which the person whose rights are to be affected is a party with full opportunity to make his defense.

2. DENVER CHARTER—HEALTH COMMISSIONER—ORDINANCES.
The powers of the health commissioner of Denver are derived from the city charter. Additional authority cannot be conferred upon him by ordinance.

*Appeal from the District Court of Arapahoe County.*
        VOL. VIII—8

Mr. F. A. WILLIAMS and Mr. G. Q. RICHMOND, for appellant.

Mr. GEORGE N. HURD, Mr. GEORGE F. DUNKLEE and Mr. O. E. JACKSON, for appellees.

THOMSON, J., delivered the opinion of the court.

This is an appeal from a judgment of the district court of Arapahoe county, annulling an order of the appellant, as health commissioner of the city of Denver, condemning ice which the appellees were engaged in selling within the city limits. The proceedings before the appellant, which resulted in the order, were reviewed by the district court on *certiorari*. The appellees in their application for the writ set forth that they were carrying on the business of selling ice in the city of Denver for refrigerator purposes, and not for drinking purposes or human consumption ; that it was suitable for the purposes for which it was being sold ; that the appellant as health commissioner of the city of Denver, at a hearing appointed by him for the purpose, without any complaint having been made to him, and without the production of any evidence, by his judgment and order then given, condemned for all purposes all of the ice being brought into the city of Denver by the appellees, prohibiting them from bringing into the city ice then held and stored by them, forbidding its sale for any purpose within the city, and directing that whenever brought into the city it be seized and destroyed. It was further alleged that the appellant, in pursuance of his order, threatened to seize and destroy the ice of the appellees, and cause their arrest and fine every twenty-four hours for violation of his order, and that he had already repeatedly arrested them, thus harassing them, and injuring their business, which he would compel them to abandon by his doings in the premises, unless he was prevented by the court. A writ of *certiorari* was prayed. The writ issued in accordance with the prayer and was duly served.

The return made by the appellant sets forth the following sections of an ordinance of the city of Denver :

" SEC. 33. It shall be the duty of the health commissioner when any complaint has been made to him by any resident, that any business, trade or profession, carried on by any person or persons, or corporation, in the city of Denver, is detrimental to the public health ; or whenever any nuisance or filth exists on the property of any person or persons, or corporation, to notify such person or persons, or corporation, to show cause before said health commissioner, at a time and place to be specified in such notice, why the same should not be abated, discontinued or removed, which notice shall not be valid unless served at least two days before the time specified in said notice (except in case of emergency when public health is in danger from pestilence, epidemic or disease, when the health commissioner shall order the abatement, removal or destruction of the offensive matter summarily), and may be served by delivering a copy thereof at the residence or place of business of the person or persons to be affected thereby, or their agents, by some officer duly qualified to serve the same, and all notices of this kind, issued by order of the health commissioner, shall be signed and certified to by the officer or person delegated to make such service. At the time fixed in the said notice the party may appear in person or by attorney, or cause may be shown by affidavit, and, if in the opinion of the health commissioner no good and sufficient cause can be shown why the said nuisance, business, trade or profession should not be abated, discontinued or removed, the said health commissioner shall order the said parties to abate, discontinue or remove the same within such time as may be officially declared, or deemed reasonable or necessary by the health commissioner. If, on the hearing of the affidavit or evidence of facts adduced before him, the health commissioner shall find in favor of the party so notified, he shall so decide, and his decision shall be entered, and the complaint shall be dismissed."

" SEC. 139. The health commissioner may condemn or

cause to be destroyed any fluid or substance intended for food or drink whenever he is satisfied that its consumption might be dangerous to health."

"Sec. 140. It shall be unlawful to sell or hold or offer for sale within the city of Denver any substance intended for food, drink or medicine which shall have chemical or physical properties differing from those which it is represented to have, and on account of which it is bought or obtained."

"Sec. 158. That any person who violates, disobeys, omits, neglects or refuses to comply with or resist any of the provisions of this ordinance, for the violation of which penalties have not hereinbefore been provided, or who refuses or neglects to obey any of the rules, orders, proclamations or sanitary regulations of the health commissioner or mayor, or who omits, neglects or refuses to obey, or who resists any officer or order or special regulations of said bureau of health or mayor, shall, upon conviction, be fined in a sum not less than three dollars nor more than one hundred dollars, and every omission, neglect or continuation of the thing commanded or prohibited by this ordinance for twenty-four hours shall constitute a separate and distinct offence, and shall be fined accordingly."

The return denies that the appellees were engaged in the sale of ice exclusively for refrigerator purposes, but avers that they were selling impure ice, wholly unfit for human consumption, or for use in refrigerators, or for any purpose where the ice was liable to come in contact with food for human consumption, and that it was not suitable for the purposes for which it was sold, but was impure and dangerous and injurious to the health and welfare of the citizens. The appellant further avers that on the 11th day of May, 1895, the appellees were convicted in the police magistrate's court of selling impure ice in violation of the city ordinance. The return sets out the judgment of the police magistrate in full, but the complaint upon which the prosecution is based is not given. The record of the judgment recites that an appeal was prayed, and an appeal bond approved, thus leav-

ing room for an inference that an appeal was taken from the judgment; but the return is silent upon the subject, and we are not informed what disposition, if any, was finally made of the case. There is not enough stated to advise us upon what ordinance or section of the ordinance the prosecution was based, or what was the precise offense of which the appellees were convicted; and for aught that appears the cause may be still pending in some appellate court, or may have been disposed of adversely to the complaining party. It is further stated in the return that on the 9th day of May, 1895, the appellant notified the appellees that their ice had been condemned, and its sale within the limits of the city of Denver forbidden; that on the 16th day of May, 1895, upon complaint made that their ice was impure and unfit for the purposes for which it was sold, the appellant cited the appellees to appear before him on the 20th day of the same month, and show cause why their ice should not be confiscated and destroyed whenever and wherever it might be found in the city of Denver; that they appeared accordingly and judgment was rendered against them, which the return sets forth in full. The judgment contains a synopsis of the complaint, as well as the findings and the evidence upon which they were made. The complaint was made by Dr. Couch, bacteriologist of the bureau of health, and J. Baum, health inspector, and was to the effect that in a cubic centimeter of the ice—equivalent to about twenty-five drops—the number of germs that were alive and had been grown from it varied from 40,000 to 80,000; and that these germs were of the variety known as "liquefying" and "gas-producing," and were dangerous to health. The findings were that the ice furnished by the appellees was obtained from Sloan's lake, and that the appellees, their agents and employés, so conducted the sale of their ice as to threaten the lives and health of the inhabitants of the city. The evidence consisted of the admissions of the appellees that they obtained their ice from Sloan's lake, and that they had no ice except Sloan's lake ice; that they served this ice to their

customers in the city of Denver, and that the ice which was examined by the bacteriologist of the bureau of health was obtained from their wagon and from their customers. The judgment then proceeds as follows: " On the other hand is sworn evidence—submitted in the police magistrate's court —that they supplied the ice to saloons and restaurants, where it is reasonable to suppose that it was taken in order to be used for human consumption, and there is sworn evidence that it was so used in Vander Weyden's saloon. The defendants present no evidence of having made reasonable inquiry or having exercised ordinary discretion in disposing of their ice, to prevent its being used for human consumption. One of the defendants says that he himself drinks Sloan's lake water and does not regard it as being bad." The foregoing embraces everything contained in the return in the nature of evidence, upon which the order of the health commissioner is sought to be justified. The court adjudged the return insufficient, and vacated the order.

If we concede that the health commissioner was invested with power to condemn and destroy the ice of the appellees, upon finding that the health of the community was endangered by its sale and use, we find nothing in the return to authorize the exercise of the power. It shows no such apparently imminent danger as to make the destruction of the property a matter of immediate necessity; and it shows no such investigation of the facts as law and justice ordinarily require before a judgment can be rendered depriving a person of his property. Circumstances may exist which seem to demand quick and summary action for the protection of health and life, and in such a case an officer upon whom authority for the purpose is conferred will not be held responsible for a sacrifice of property which the exigencies of the situation appear to require. But no decision which we have found goes further than this, and where the necessity for immediate action does not exist, a judgment condemning property must be the result of a trial before a regularly authorized tribunal, in a proceeding to which the person whose

rights are to be affected is a party, and in which the burden
of proving the charges is upon the complainant, and full
opportunity is given to the adverse party to make his defense.

The case of *Raymond v. Fish*, 51 Conn. 80, was an action
to recover damages for the destruction of property under an
order of the board of health of the town of Groton. Scarlet
fever and diphtheria had broken out in the village of Poquon-
nock, which assumed a malignant type, and became epidemic.
An investigation, carefully made, satisfied the board of health
that certain oyster beds of the plaintiff were the cause of the
epidemic, and upon its order they were forcibly removed and
destroyed. The court held that the board of health had the
power to decide conclusively, in the apparent necessities of
the case, that the beds were a nuisance, endangering the life
and health of the inhabitants of the village. But the effect
of the decision is qualified and limited by the following lan-
guage : " The justification of the board of health in the
destruction of the property must come in *seemingly* extreme
cases, where there is reasonable ground to believe that imme-
diate action is necessary for the preservation of the life and
health of the inhabitants, and where there is reasonable
ground to believe the supposed nuisance to be one in fact."

In *Weil v. Ricord*, 24 N. J. Eq. 169, the chancellor said :
" The board of health may proceed, without notice, in case
of public emergency, to abate a nuisance ; but their adjudi-
cation going beyond this, to the extent of depriving a person
of the use of his premises for the future, in his lawful busi-
ness, would, if otherwise lawful, be invalid, if an opportunity
had not been afforded to him to be heard before the making
of the adjudication." To the same effect is the decision in
*City of Salem v. Eastern R. R. Co.*, 98 Mass. 431, in which it
was said : " The necessity of the case, and the importance of
the public interests at stake, justify the omission of notice to
the individual." But further on the court remarked as fol-
lows : " 'It is an essential principle of natural justice that
every man have an opportunity to be heard in a court of law,
upon every question involving his rights or interests, before

he is affected by any judicial decision of the question.' * * * In the case of *Belcher v. Farrar*, 8 Allen, 325, 328, it is intimated that even a general regulation, adopted by a board of health in accordance with the statute, which might operate to render valueless a large property by forbidding the prosecution of the business for which it was erected, would be invalid as in violation of 'one of the fundamental principles of justice,' but for a provision of the statute which gave to the party a right of appeal from the order enforcing the regulation, and upon such appeal to have the whole matter involved in the issue tried by a jury."

The facts in *Hutton v. City of Camden*, 39 N. J. Law, 122, were that the board of health had declared a sunken lot to be a nuisance, and ordered the owner to fill it up to grade. The order not being complied with, the city did the work and brought suit for reimbursement for the necessary outlay. Inasmuch as the question we are considering is exhaustively discussed in the opinion, we feel justified in quoting from it at some length : " It is not within the competence of legislation in this state, to authorize any tribunal to render a judgment against the person or property of a citizen without a notice, and an opportunity afforded to him to be heard. If the charter of the city of Camden had declared that the board of health should have the power of rendering decisions similar to the present one, and under the same conditions of procedure, such provision would have been entirely nugatory. A judgment in any court, without in anywise summoning the defendant, would be void, and not merely voidable. * * * Giving therefore to this resolution the utmost legal effect that can be ascribed to it, by conceding to the sanitary board a judicial capacity in the premises, still its action must be regarded as entirely void, inasmuch as it appears that it had not acquired jurisdiction over the plaintiffs in error. The proceeding was *coram non judice*, and as such was not merely voidable, but was an absolute nullity. But to rest here would be to put this matter on too narrow a ground. There is an infirmity in all proceedings of this nature, which lies

deeper than the one just noticed. Assuming the power in this board derived from the legislature, to adjudge the fact of the existence of a nuisance, and also assuming such jurisdiction to have been regularly exercised, and upon notice to the parties interested, still, I think, it is obvious, that in a case such as that before this court, the finding of a sanitary board cannot operate, in any respect, as a judgment at law would, upon the rights involved. It will require but little reflection to satisfy any mind accustomed to judge by legal standards, of the truth of this remark. To fully estimate the character and extent of the power claimed, will conduct us to its instant rejection. The authority to decide when a nuisance exists, is an authority to find facts, to estimate their force, and to apply rules of law to the case thus made. This is a judicial function, and it is a function applicable to a numerous class of important interests. The use of land and buildings, the enjoyment of water rights, the practice of many trades and occupations, and the business of manufacturing in particular localities, all fall, on some occasions, in important respects, within its sphere. To say to a man that he shall not use his property as he pleases, under certain conditions, is to deprive him, *pro tanto*, of the enjoyment of such property. To find conclusively, against him, that a state of facts exists with respect to the use of his property, or the pursuit of his business, which subjects him to the condemnation of the law, is to affect his rights in a vital point. The next thing to depriving a man of his property, is to circumscribe him in its use, and the right to use property is as much under the protection of the law as the property itself, in any other aspect, is, and the one interest can no more be taken out of the hands of the ordinary tribunals than the other can. If a man's property cannot be taken away from him except upon trial by jury, or by the exercise of the right of eminent domain upon compensation made, neither can he, in any other mode, be limited in the use of it. The right to abate public nuisances, whether we regard it as existing in the municipalities, or in the community, or in the land of the individual,

is a common law right, and is derived, in every instance of its exercise, from the same source—that of necessity. It is akin to the right of destroying property for the public safety, in case of the prevalence of a devastating fire or other controlling exigency. But the necessity must be present to justify the exercise of the right, and whether present or not, must be submitted to a jury under the guidance of a court. The finding of a sanitary committee, or of a municipal council, or of any other body of a similar kind, can have no effect whatever, for any purpose, upon the ultimate disposition of a matter of this kind. * * * I repeat that the question of nuisance can conclusively be decided, for all legal uses, by the established courts of law or equity alone, and that the resolutions of officers, or of boards organized by force of municipal charters, cannot, to any degree, control such decisions. * * * The ignorant, hasty, and indiscreet conduct of this board of health, is an admonition not to be disregarded, against listening to any claim that, under any circumstances, the power of ultimate judgment over the law and facts with respect to the rights of persons or of property can be safely confided to other hands than those of the ordinary judicial tribunals."

In this case the return does not show, and does not pretend that there was any urgency, or necessity for haste, by which the omission to give notice might be justified; but it is contended that notice was given and a hearing had. All the facts accessible to us concerning the notice and hearing are set forth in the appellant's return to the writ, and it is assumed that nothing which tends to a justification of the order as made has been omitted. From this return it appears that the first notice of any kind ever received by the appellees from the appellant concerning their ice was the notice of May 9, 1895, that their ice had been condemned and its sale forbidden. The next notice was a citation to appear before the health commissioner and show cause why they should not discontinue their business in the city of Denver, and why ice brought by them into the city should not be

destroyed. A complaint had been made that the ice was infested with germs of a variety dangerous to health. They were not summoned to answer this complaint or any complaint, or notified to be present at a hearing where the charges set forth in the complaint were to be inquired into. The citation impliedly assumed the guilt of the appellees, and required them to show cause why an order already determined upon should not be enforced. That order condemned their ice and forbade its sale, and was made without notice to them of any kind. At the so-called hearing there was no evidence introduced that the ice was impure or unwholesome; but upon the admission of the appellees that the ice came from Sloan's lake, that they sold it to their customers, and that it was the same ice which the bacteriologist had examined, judgment went that it be seized and destroyed. This was not the kind of hearing to which they were entitled. Upon complaint that their ice was impure, the burden of proof was upon the person making the charge; the presumptions were in their favor, and without affirmative evidence against them they were guiltless. In justification of the commissioner's proceedings reliance seems to be placed on section 139 of the ordinance, which authorized him to condemn or cause to be destroyed any fluid or substance intended for food or drink, whenever he was satisfied that its consumption might be dangerous to health; and we must say that unless authority for the summary proceedings of the commissioner is found in that section, the ordinance does not contain it. But we cannot consent to a construction of the section which would empower a man, merely because he is distinguished from his fellow citizens by the title of health commissioner, to go about the city giving orders for the destruction of property, whenever, by some mental operation of which he alone is cognizant, he has concluded that its use might be dangerous to health. He must become satisfied of the noxious character of the property in a legal way, by the application of legal methods, and as the result of an investigation conducted in accordance with the rules governing judicial proceedings, of

which due notice has been given to the owner of the property, and at which full opportunity is accorded him to resist the proposed action and make his own defense.

In so far as the ordinance may empower the health commissioner summarily to make a final and conclusive order for the destruction of property, except under extraordinary conditions, it is invalid, and no justification to the officer for so proceeding. But the powers of the commissioner are derived from the statute, and not from the ordinance; and in so far as the latter assumes to confer authority in excess of that given by the statute, it is void. The following sections of the charter of the city of Denver are the only statutory provisions affecting the question as it is presented in this case:

"Sec. 54. The health commissioner shall be a physician duly licensed under the laws of this state, and shall have been duly engaged in the practice of medicine for at least five years. He may in case of emergency, employ one or more competent physicians, to assist him in the discharge of his duties, and shall make all rules and regulations, not inconsistent with the laws or ordinances of the city, apt and necessary for the preservation of the public health, or for the prevention and suppression of malignant, infectious and contagious diseases, or epidemics which may appear or are likely to appear in the city. It shall be the duty of the health commissioner to superintend and direct all sanitary and plumbing inspection on behalf of the city; the erection and care of hospitals, and to execute all ordinances in this behalf; and he is hereby authorized to enter in the day time upon any premises and into any houses and buildings in the city, and cause to be abated, removed or destroyed, any nuisance or any substance injurious to health wherever the same may be found in the city; and for said purposes the health commissioner may command the services of the police force or any part thereof to aid him in the inspection of any premises, houses or buildings, or in the abatement, removal or destruction of any such nuisance or noxious substance found at any place in the city.

"SEC. 55.. For said purposes the health commissioner shall have power whenever in his opinion said nuisance or filth exists, to notify the owner or owners thereof or his agents, to abate or remove the same, either by filling up, draining, cleaning, purifying or removing the same, as the case may be. Said notice shall be in writing and served upon the owner or agent having charge of said property. The notice shall be served by any policeman or employé of the bureau of health, and shall specify the time in which the party is required to abate or remove the matter complained of. Any person who shall as owner or agent, fail to comply with such order or to show good cause for such failure, for which purpose he shall be entitled to a hearing before the health commissioner, shall be deemed guilty of a misdemeanor, and upon conviction shall be fined and punished as may be provided by ordinance, and the nuisance shall be abated or removed, and the cost thereof collected by the city, with interest and damages, in any suitable action." Session Laws 1893, secs. 54, 55.

The powers granted by the foregoing provisions are limited to cases of nuisance, or in the nature of nuisance. The health commissioner is authorized upon certain conditions to cause nuisances to be abated, and noxious substances removed or destroyed. But there must be a determination in some way that a nuisance exists, or that the substance is noxious, before measures can be taken to abate or remove it. We cannot conceive that it was the intention of the legislature to commit the fate of property, regardless of surrounding conditions, to the arbitrary and irresponsible decision of one man, and so clothe him with an authority which might be used without limit for purposes of oppression. If the statute must be so construed, it is in violation of rights guaranteed by the constitution, and therefore void. Under ordinary circumstances, whether the use made by an individual of his property, or the condition of his property, constitutes a nuisance, is a question of fact, upon which, before property rights can be destroyed or impaired, the owner of

the property is entitled to a hearing, to be conducted in accordance with legal rules. After property has been legally and regularly adjudged to be a nuisance, the health officer can proceed in the exercise of the powers with which the statute clothes him. And first, the existence of the nuisance or noxious substance having been determined, the owner must be notified to abate or remove it himself; and it is only upon his failure or refusal to comply with the order, that further proceedings by the officer will be allowed. While we do not think the statute contemplates a case like the one at bar, because neither ice nor the business of selling it is, in itself, a nuisance, yet waiving any question of this kind, there was no judicial determination that the ice in question was in any degree unwholesome or impure, and there was no preliminary notice to the appellees to discontinue their business or destroy their ice. The giving of such notice, even supposing all prior proceedings to have been regular, was an indispensable prerequisite to any order which the commissioner might make for the destruction of the ice.

We are of the opinion that the order of the appellant for the seizure and destruction of the ice of the appellees was void, and that every step taken by him in the proceeding in which the order was made was in violation of law.

It follows that the judgment of the district court was right and must be affirmed.

*Affirmed.*